## IN RE PIERCE.

*February 13—March 9, 1926.*

*Attorneys: Admission to the bar: Necessity for actual residence in the state: Nonresident attorneys: Appearance in local courts: Proof required to obtain license: Certificate of nonresident judge: Evidence as to practice outside of state: Sufficiency.*

1. *Bona fide* residence in the state, with actual residence and an established place of business, is essential for original admission to the bar; but the right to practice continues for life unless revoked, and is not forfeited by absence from the state or a temporary abandonment of professional practice. p. 449.

2. Permitting an attorney of a sister state to conduct trials in this state is a privilege extended to and not a right of the applicant. p. 450.

3. What length of residence shall be required before one may be admitted to practice law is for the determination of the state where such practice is to be conducted. p. 450.

4. The fact that an attorney of a sister state was an actual resident, elector, and office-holder in this state does not of itself interfere with his being in "actual practice" in another state within the meaning of sub. (3), sec. 256.28, Stats., where it appeared that his name continuously remained on the roll of attorneys in the courts of that state. p. 451.

5. The supreme court of this state must determine what is satisfactory proof of the practice required of an attorney of a sister state before admission to the bar of this state, and such function cannot be delegated. The certificate of the judge of another state before whom an applicant for admission to the bar has practiced is not conclusive proof of the sufficiency of the required practice. p. 451.

6. Under secs. 370.01 to 370.08, Stats., and especially sub. (2), sec. 370.01, the time of practicing in different states where there has been an admission to the bar may be added or tacked in passing on the application of an attorney of another state for admission to the bar. p. 452.

7. The evidence in this case is *held* to show that the applicant for admission to the bar, who was a resident of Wisconsin, engaged as cashier and treasurer of a loan association and as county treasurer, devoting substantially all of his time to matters other than the practice of the law, was not engaged in actual practice in another state.   p. 452.

CROWNHART, J., dissents.

ORIGINAL APPLICATION to this court to cancel and revoke its certificate of November 12, 1924, admitting *Glenn V. Pierce* to the practice of law.   *Certificate revoked, and his name stricken from the roll of attorneys.*

In October, 1924, *Glenn V. Pierce,* a resident of Buffalo county, this state, made oral application to this court for admission to the bar.   He then and thereafter presented certificates, one from a presiding judge of the Fourth judicial district of the state of Minnesota, given at Minneapolis, and others of attorneys at law in said state, purporting to certify that said *Pierce* had for five years and more during the eight years preceding such application been engaged in the actual practice of law in the state of Minnesota. Thereupon and on November 12, 1924, on motion before this court, he was admitted, signed the roll of attorneys, and a certificate was issued to him.

Thereafter a petition was filed here by members of the bar of said Buffalo county requesting this court to inquire into the facts, and, if found to be as alleged in such petition, to cancel such certificate on the ground, among other things, that said *Pierce* had not been so engaged in actual practice in the state of Minnesota as required by the statute.

After hearings before this court upon said petition, an order to show cause to, and appearance by, said *Pierce,* the matter was referred to the Honorable JAMES WICKHAM of the Nineteenth judicial circuit to hear the testimony and report his findings as to the facts.

After hearing, said referee reported and filed here his findings, to which no exceptions were filed, and from the record and said findings the following appears:

*Glenn V. Pierce* on June 14, 1915, then twenty-two years of age, was duly admitted to practice as attorney and counselor at law in all the courts of the state of Minnesota by the supreme court thereof; and that since such time his name has continued on its roll of attorneys, and he has not been suspended or disbarred, nor placed under disability to practice in the courts of Minnesota.

That after such admission he engaged in the practice of law in the city of Minneapolis, sharing an office with one Axel A. Eberhart, an attorney, had some office furniture of his own and his name as attorney on the door, sharing with said Eberhart a portion of the office expenses, and that such arrangement continued until June, 1917.

June 5, 1917, he registered for the army draft, and on July 28th enlisted at Chicago in the army service, all as from Wisconsin. Prior to such enlistment he removed his office furniture and belongings from Minneapolis to Mondovi in said Buffalo county. Eberhart then sublet to another the portion of the office theretofore occupied by the said *Pierce,* but *Pierce's* name remained on the door until some time in 1922, and he was apparently charged with some amount on account with Eberhart. He then turned over for further attention to said Eberhart and other attorneys certain matters and about eleven lawsuits he had then pending in Minnesota, copies of records in nine of which were produced. From some of such he subsequently received some compensation.

August 1, 1917, he applied for and obtained a license in, and to marry a resident of, Hennepin county, Minnesota, the application reciting that he was a resident of Buffalo county, Wisconsin, his present and former home. He was in active service in the army of the United States and in France until his discharge therefrom April 15, 1919. Subsequent to such discharge he spent four to five months in visiting in Minnesota and in Montana. In November, 1919, he made application to the state of Minnesota for war service bonus of

$16 per month, stating in such application that he had not returned to his former business.

From January, 1920, on he continues his actual residence at Mondovi, applies for and obtains a certificate and renewal thereof as notary public as and for Buffalo county; votes at primary and general elections as a resident voter of said county; is a candidate for mayor, and is elected county treasurer of said county in November, 1922, and serves two years as such at an annual salary of $1,000. Early in 1920 he is appointed cashier of a bank at said Mondovi and also as secretary or officer of a farm loan association, receiving as compensation for the services in such capacities about $4,500 per year from then on,—these positions occupying the substantial part of his time.

Following his election as county treasurer he filed written application with a surety company for a bond as such county treasurer, and in answer to a question therein contained: "Will you continue in any business or employment during your term of office? If so, state character of same," he answered: "Yes, sec.-treas. Farm Loan Assoc. and cashier Mondovi State Bank;" and gave as the probable net income from such employment $4,500 per annum, but made no mention of any law practice or possible receipts from such.

In November, 1921, he made arrangements for the use of a desk in the office of a large law firm in the city of Minneapolis and used the same from time to time thereafter on his visits at regular intervals to said city, and made an arrangement whereby he was to share in the proceeds from any law business that he might obtain and turn over to said firm.

*Pierce* compiled from the bank books in which was kept an attorney and a personal account, a list of amounts received by him, stated to be for legal services for the years 1920-1924, but was unable to specify the person from whom, or the matter in connection with which, such amounts were

received, except as hereinafter mentioned.   Such tabulation
is recited in the statement following for the several years.
He kept no set of books for his law business.   His testimony
as to his claim of legal practice and receipts therefrom in
the state of Minnesota during the five years in question
shows as follows:

### *1919.*

He tried no cases and had none on the court calendar.
He received the following:

From the Redness Case, disposed of by another
   attorney ................................$50 00
For obtaining a renewal note for one outlawed .... 50 00
In settlement of one of the prior lawsuits ....... 25 00
For consultation in another lawsuit he was paid
   $10 or ................................. 15 00

    Total ..............................$140 00

He had consultations with persons interested in five other
matters, but accounts for no specific amounts, if any, paid,
or any substantial amount of work done.

### *1920.*

He tried no cases, had none on the court calendar, and did
no probate work.   From April 14th on as cashier of a bank
at Mondovi and secretary-treasurer of the Farm Loan As-
sociation, having earlier in that year sold stock.   He had
consultations in former matters or lawsuits, and

Settled one for $50, receiving .................$25 00
Another settled through Eberhart, paying *Pierce* .. 25 00
Another settlement ........................... 5 00
Another settlement for $50, he receiving .......... 25 00

                                           $80 00

He also took up and settled at Minneapolis the claim of
a resident of Buffalo county against the railroad administra-
tion of $90.   He stated his earnings as approximately $300.

And his bank account was as follows: Deposits in 1920 of thirteen items, including as larger items:

| | |
|---|---:|
| January 20 ........................ | $67 90 |
| February 3 ........................ | 35 00 |
| April 8 ........................... | 195 00 |
| September 1 ....................... | 25 00 |
| December 6 ........................ | 40 00 |
| Others ............................ | |
| | $441 65 |

### 1921.

He tried no cases, had none on the court calendar, and did no probate work. In November he closed his office with Eberhart and all relationship with him as partner or associate. He accounts for no cash received for any specific matters during this year and had consultations with two persons interested in prior matters and with one person concerning certain mortgages, which, with others, was subsequently turned over in October, 1924, to the firm of attorneys in Minneapolis. His bank account for 1921 showed nine items, the larger ones being:

| | |
|---|---:|
| January 18 ........................ | $35 37 |
| August 9 .......................... | 50 00 |
| October 12 ........................ | 30 00 |
| October 19 ........................ | 59 00 |
| Others ............................ | |
| | $224 62 |

### 1922.

No cases tried, none on the court calendar, and no probate work. He settled one prior matter for $100, was paid $25. He drew two wills for Mr. and Mrs. Pace in Minneapolis, formerly of Buffalo, receiving $10. He consulted with his father-in-law at Minneapolis concerning a threatened conspiracy and blackmail case. He further investigated the matter of mortgages mentioned in the preceding year. His

In re Pierce, 189 Wis. 441.

bank entries for 1922 out of nineteen items included as larger items:

February 8 ........................$42 50
June 9 ........................... 20 25
August 30 ........................ 15 00
October 27 ....................... 22 00
December 20 ...................... 29 80
Others ...........................
                              ——— $222 80

*1923.*

He tried no cases, had none on the calendar, and did no probate work.  He was in Minneapolis on an average of twice a month.  He spent three or four days in his father-in-law's matter above mentioned.  He examined a deed, abstract, and title for the purchase or sale of Minneapolis property for a resident of Buffalo county.  His bank account for 1923, with nine items, the larger being:

March 31 .........................$20 00
June 14 .......................... 30 39
July 30 .......................... 28 75
August 9 ......................... 55 00
Others ...........................
                              ——— $182 41

*1924.*

He tried no cases, started no lawsuits, and made no appearances in court or before the judge who gave the certificate aforesaid.  He finally settled his father-in-law's case at Seattle and received $75.  He had meetings with a number of persons resident in Buffalo county and with the attorney from Minneapolis concerning the Minnesota mortgages spoken of above, culminating in the starting of about nineteen lawsuits in Minnesota, Iowa, and Wisconsin by the Minneapolis attorneys, none of which cases, however, were started in court before October 17th (the date of his application here).  On five of these cases he was paid his

share of the retainer on October 6th of $297 (part or all of which is included in the bank account just below).

In addition to the above matters, an action was started on his behalf and an unverified complaint filed November, 1924, alleging a loan in January, 1916, of $2,000 by *Pierce* to Eberhart, two payments thereon of $200 each in 1918 and 1919, and by stipulation judgment was entered at the same time for the balance of $1,600. He testified as to this, that, though ostensibly for a loan, it was really for an accounting for his share of the earnings while associated with Eberhart as aforesaid. His bank account for 1924 of fourteen items included as the larger items:

| | |
|---|---:|
| May 7 | $53 40 |
| October 6 | 84 00 |
| October 7 | 53 00 |
| October 10 | 136 50 |
| October 13 | 81 00 |
| Others | |
| | $540 55 |

For the petitioners there were briefs by *Buehler & Buehler* of Alma, *Gilman & Broadfoot* of Mondovi, *M. L. Fugina* of Fountain City, and *Oliver R. Weinandy* of Cochrane, and oral argument by *Mr. Theo. Buchler* and *Mr. Fugina*.

For the respondent there were briefs by *Olbrich, Brown & Siebecker* of Madison and *Roy P. Wilcox* of Eau Claire, and oral argument by *Mr. Olbrich*.

ESCHWEILER, J. The respondent, *Glenn V. Pierce,* a resident of this state, elected to apply for license to practice as an attorney, not under sub. (6) of sec. 2586 (now sec. 256.28), Stats., providing for the state bar examination, but rather under sub. (3) of the same section. The part material here of this sub. (3) requires: his present residing here; filing of a written application; the certificate of his admission to practice in the court of last resort of a sister state; satisfactory proof that he is of good moral character

In re Pierce, 189 Wis. 441.

and has been engaged in actual practice in such other state for five years, within the last eight years, prior to application; and provides that the certificate of the judge of any court of record in such other state, before whom such applicant has practiced, under the seal of such court, shall be deemed sufficient proof of such practice.

Upon this statutory regulation as to admission to the bar, which this court has accepted and acted under for some time past, several questions have been here presented, stated as follows:

1. May an attorney, actually a resident here, continue while so resident to be engaged in the actual practice of law in another state?

2. Is the certificate of the judge of a court of record in such other state before whom any such applicant has practiced not only sufficient but conclusive proof of such practice?

3. And of our own suggestion, in view of this question arising under other applications before us, May such statutory condition, requiring five years of actual practice, permit a tacking of an actual practice in one state onto an actual practice in another and which all together make five years?

4. Was *Glenn V. Pierce* in the actual practice of law in Minnesota during the five years?

Intending in no manner to lessen the requirements that have heretofore been maintained or to lower the standards heretofore adopted by this court for admission to and continuance in the practice of law, we feel that a reasonable and proper construction of the statute, and of the legislative and judicial expressions of public policy on the subject, require us to answer the first three questions above outlined as follows:

*Bona fide* residence in the state is an essential condition for original admission to the bar, with actual domicile and an established place of business, so that there may be no insuperable obstacle placed in the way of service of process

and papers and such attorney be subject to the orders of the courts of his state. *In re Mosness,* 39 Wis. 509. Yet once admitted the right continues, and is for life unless revoked. *Hanson v. Grattan,* 84 Kan. 843, 115 Pac. 646, 34 L. R. A. N. s. 240; 6 Corp. Jur. 580. Mere absence from the state does not of itself necessarily forfeit or abandon the right to practice originally granted. Nor has it been recognized, so far as has come to our observation, that a temporary abandonment of the legal profession as an immediate means of livelihood and a failure for a time to exercise the rights and privileges granted by the certificate of admission is a destruction of the right or privilege to a subsequently renewed practice.

As a matter of comity the courts of this state have practically always (*In re Mosness,* 39 Wis. 509, *supra*), except in criminal proceedings on behalf of the State (*State v. Russell,* 83 Wis. 330, 53 N. W. 441), cheerfully conceded the privilege to attorneys of sister states to engage in the conduct of trials in this state. But such has always been recognized as a privilege extended to such outside counsel and not as a right to be claimed on their part. *Barnes v. Verry,* 154 Minn. 252, 191 N. W. 589; 6 Corp. Jur. 573. There can be no question but that many lawyers of prominence have carried on substantial law business in more than one state at the same time and without question or criticism. The extent to which such privilege may be extended is a matter for the courts of each state to determine when a question in that regard is presented in any particular situation. The question of what shall be the required connection between residence and the practice of law is therefore primarily for the state where the practice is sought to be conducted. *In re Mosness, supra; Barnes v. Verry, supra.* In Maine residence does not seem to be required (*In re Tryon,* 114 Me. 549, 96 Atl. 235); and in New York by ch. 175 of the Laws of 1866, later repealed by ch. 417 of the Laws of 1877, but made a law as § 60, Code of Civil

Procedure of 1877, and now found in 5 McKinney's Con. Laws, p. 216, as § 470, ch. 35 of the Laws of 1909, attorneys with homes outside of the state of New York were permitted to nevertheless practice in the state .provided they there maintained an office.

We find nothing to militate against this holding in the case of *Vernon County Bar Asso. v. McKibbin,* 153 Wis. 350, 141 N. W. 283. There was considered the same provision we have here except that then two, and not five, years of actual practice in another state was required. There the respondent had been admitted by the Tennessee supreme court, went to West Virginia and was there admitted by a circuit court, but *not* by the supreme court; and so it was held that the two years spent in practice in West Virginia could not be within our statute. That decision was expressly placed (p. 355) upon the fact that he had not practiced at all in the only state where he was admitted by and to its supreme court.

On the first question above suggested we therefore hold that the fact that *Pierce,* respondent here, was for a considerable portion of the five-year period an actual resident, elector, and office-holder of the state of Wisconsin does not of itself prevent or interfere with his being engaged in actual practice under said statute in a sister state, especially where, as here, it appears in the record that his name has continuously remained on the roll of attorneys in the Minnesota courts.

On the second question: This statute requires that there shall be furnished to this court *satisfactory proof* that an applicant has been engaged in *actual practice* in such other state. It further declares that the certificate of a judge from such other state shall be deemed sufficient proof of such practice. The tribunal which is to determine what is satisfactory proof of such practice is this court and not the court or any judicial officer of any other jurisdiction. That function is one that cannot be delegated. The legislature

has clearly not attempted to make such a certificate conclusive and binding upon us, and we most certainly have no intention of so construing the statute or to so abdicate a judicial function. The second question is therefore to be answered that such certificate is but *prima facie* proof and not conclusive. *In re Attorney's License,* 21 N. J. L. 345.

On the third question: Although the statute, in the provisions now being considered, is in the singular, yet under general rules, and under the rules in ch. 370 for the construction of statutes, especially sub. (2), sec. 370.01 (formerly sec. 4971), providing that the singular may be construed in the plural, we have been recently holding, and now so state, that there may be, under said statute, such a tacking of actual practice, provided that there be an admission to the supreme court in each such state. The material and substantial requirements of this statute are: the actual practice and the period of five years; therefore in which particular state such practice may be had is not so material.

On the fourth and last question we are compelled by the facts recited in the above statement to hold that it does not satisfactorily appear to us that there was an *actual practice,* but that the contrary conclusively appears. During the time in question the applicant, a resident of Wisconsin engaged as cashier of a bank and secretary and treasurer of a loan association and for two years as county treasurer, was devoting substantially all of his time to matters other than the practice of the law. While so engaged in Wisconsin he could not be substantially engaged in the *actual practice* of the law in Minnesota. An "actual practice" requires, and must command, a substantial portion of the working time of a practitioner.

We have no present intention or inclination to lay down any minimum requirements as to what shall be such "actual practice" of the law; and we have no intention of saying that the value or quality of the intellectual effort that may

be expended in the practice of law is to be gauged or measured by the numismatic return to the practitioner.

Much that *Pierce* did as disclosed above, such as drawing wills, referring litigation to other attorneys, adjusting claims, are matters and things that might have as well come to him in his daily work in the other capacities, and be done by one so engaged, as by one in the practice of law. Under any possible view that we can properly take of the situation, *Pierce's* own showing as to what he did during the five-year period falls far short of what is and should be required; and his certificate having been issued upon a misunderstanding by this court of the true situation, must for that reason be revoked.

*By the Court.*—The certificate of this court to *Glenn V. Pierce* of November 12, 1924, admitting him to practice, is to be surrendered, canceled, and revoked, and his name stricken from the roll of attorneys.

CROWNHART, J. (*dissenting*). *Glenn V. Pierce*, a resident of Buffalo county, attended the University of Minnesota law college, and graduated there in June, 1914. This law school is of the same grade and character as the law college of the University of Wisconsin.

Upon his admission to the bar of Minnesota soon thereafter, *Mr. Pierce* opened a law office in Minneapolis and began the practice of his profession. He continued there until the summer of 1917, when he responded to the call of his country for men to join the colors for the great World War. He sought enlistment in the aviation branch and was advised to go to Chicago and enlist there as from the home of his parents in Buffalo county. Like many of the youth of the land, he first consummated his engagement to, and married, a Minneapolis young lady; then to the service and over seas, leaving his bride with her parents in Minneapolis. He served his country until April 15, 1919, when he was

honorably discharged and returned to his bride, only to find her sick and himself largely in debt and with no practice. Unsettled and ill at ease, he cast about for something to do. He went to Montana and back to Minneapolis, and finally found a job with a bank in his native town in Buffalo county, which he took as a makeshift until he could get something ahead and again settle down to practice. In the meantime he continued to do some law practice in finishing some work that he had on hand before he went to the war, and had the use of a law office in Minneapolis as needed. He became a resident of Wisconsin and was elected treasurer of Buffalo county. Then in October, 1924, he made application to be admitted to the Wisconsin bar. He presented the statutory credentials and was duly admitted. Later he became a candidate for county judge of Buffalo county, and then his troubles began.

It was in some way, not shown by the record, brought to the attention of this court that there was some claim that *Mr. Pierce* was not properly qualified for admission to the bar of this state when he was admitted. This court felt moved to inquire into the matter, and in response to an invitation *Mr. Pierce* appeared before the Justices in chambers. The record is silent as to what there happened, but it is significant that the court took no further action. *Mr. Pierce* was elected county judge, and then six attorneys of the Buffalo county bar appeared by petition and asked that *Mr. Pierce's* license to practice in this state be revoked. From then on the opinion of the court tells the tale pretty well, but I respectfully dissent from the conclusion.

There is no pretense that *Mr. Pierce* has not the educational qualifications to practice law; his general character is above reproach; he is a worthy citizen, having the confidence of his fellow citizens; he is now county judge of Buffalo county, serving as such. The action of this court may disqualify him as county judge, because a county judge must be an attorney of a court of record. Sec. 253.02, Stats.

My dissent is based on the following:

1. *Mr. Pierce* was regularly admitted, and there was nothing but a bare technical reason for going behind his credentials.

2. The reason, apparently, is not that justice demands that this young man, who, but for the call of his country to make the great sacrifice, would now undoubtedly be enjoying á good practice, be dismissed and disgraced, but to try title to the office of county judge.

3. The practice that *Pierce* has had meets the require- ments of the statute. *Barr v. Cardell,* 173 Iowa, 18, 31, 155 N. W. 312, 316; *In re Duncan,* 83 S. C. 186, 65 S. E. 210; *People v. Alfani,* 227 N. Y. 334, 337, 125 N. E. 671, 673; *Eley v. Miller,* 7 Ind. App. 529, 535, 536, 34 N. E. 836–838.

It is clear from the opinion of the court that *Mr. Pierce* was engaged in the practice of the law sufficiently to entitle him to practice. "Actually engaged" is defined by the Alabama court in *In re Strawbridge,* 39 Ala. 367, 383, where it is said:

"The words 'actually engaged,' in common parlance, mean 'really or truly engaged'—engaged in fact, and, according to the same law of common use, are the opposite or antithesis of 'seemingly' or 'pretendedly' or 'feignedly engaged.' In the common acceptation of the words, the same man may be 'actually engaged' in two or more pursuits or occupations at the same time. We have numerous instances in our country where the same man is, at the same time, a merchant and a planter, a physician and a planter, a lawyer, or a judge, and a planter. In fact it is a common thing for men of good property to combine the business of planting with some other pursuit or occupation. Many men do not stop at two, but unite in themselves three or four, in all of which, according to common parlance, they are actually engaged."

Many other cases are cited by counsel justifying the admission of *Mr. Pierce* to this bar. We are not required to strain at a legal technicality to do this wrong. The statute

says that the certificate of the judge of any court of record before whom the applicant has practiced, under seal, shall be deemed sufficient proof of such practice.    *Mr. Pierce* furnished this proof from an able and honorable district judge of Minnesota.    Now petitioners haggle over the sufficiency of such practice in order to turn this veteran of the World War out of his office of county judge.    I don't think their petition has any merit.

How quickly we forget.    When *Mr. Pierce* was called upon to leave his practice to fight our battles in a foreign war, college students were granted their degrees before they had finished their courses, if they would leave their college and enlist, or even if they would leave to work on the farms to help the war; Justices of the courts were particularly urging the youth of the land to go to the front, promising them that they should suffer no loss of station or occupation when they returned; legislatures were passing laws to free them from penalties of legal obligations during their absence.    And now, those who stayed at home and profited by *Mr. Pierce's* absence at the front petition this court that his sacrifice shall be used against him, and this court listens with patience and decides that the letter of the law, contrary, as it seems to me, to the reason and spirit of the law, must prevail.

I respectfully dissent.