[No. 30058.  *En Banc.*  January 7, 1947.]

THE STATE OF WASHINGTON, *on the Relation of Robert V. Laughlin, Plaintiff,* v. THE WASHINGTON STATE BAR ᵛASSOCIATION, *Respondent.*[1]

[1]Reported in 176 P. (2d) 301.

*Ward W. Roney* and *John J. O'Brien,* for relator.

*S. H. Kelleran,* for respondent.

CONNELLY, J.—Relator, Robert V. Laughlin, a colonel in the United States army, instituted the present proceeding by filing an application for a writ of certiorari, to be directed to the board of governors of the Washington state bar association, and for an interlocutory order, directed to the same agency, requiring it and its officers to show cause why his application for admission to the bar of the state of Washington, theretofore filed with the secretary of the bar association in October, 1943, should not be granted.

 We consider the procedure adopted in this court by relator as erroneous for the reason that the legislature has not conferred upon the board of governors of the Washington state bar association or any of its officers the power to enter orders admitting persons to the practice of law in this state, and for the further reason that this court has never delegated to the Washington state bar association or any of its officers power to admit applicants to the practice of law. Should the relator's application for admission to the bar of this state be granted or rejected, it will be by order of this court, not by emergency mandate under the form of extraordinary relief directed to an inferior tribunal.

The powers of the Washington state bar association in relation to admission and disbarment are clearly defined in Rem. Rev. Stat. (Sup.), § 138-8 [P.P.C. § 273-15], which, in its applicable portion, reads as follows:

"The said board of governors shall likewise have power, in its discretion, from time to time to adopt rules, *subject to the approval of the supreme court,* fixing the qualifications, requirements and procedure for admission to the practice of law; and, with such approval, to establish from time to time and enforce rules of professional conduct for all members of the state bar; and, with such approval, to appoint boards or committees to examine applicants for admission; · . . . " (Italics ours.)

It has been a fixed rule in this state that the paramount power of determining which lawyers may or may not appear in the courts is inherently an attribute of the judicial branch of the state government and, particularly, of the supreme court, which is the highest in order in the judicial hierarchy. We so held in *In re Lambuth,* 18 Wash. 478, 51 Pac. 1071, in the year 1898, when we said:

"But power to strike from the rolls is inherent in the court itself. No statute or rule is necessary to authorize the punishment in proper cases. Statutes and rules may regulate the power, but they do not create it. It is necessary for the protection of the court, the proper administration of justice, the dignity and purity of the profession, and for the public good and the protection of clients. Attorneys may forfeit their professional franchise by abusing it, and the power to exact the forfeiture is lodged in the courts which have authority to admit attorneys to practice. Such power is indispensable to protect the court, the administration of justice, and themselves."

In *In re Bruen,* 102 Wash. 472, 172 Pac. 1152, we re-emphasized that rule in a masterful opinion by Judge Holcomb which has since been cited extensively by practically all of the appellate courts of the country. The following pertinent expressions by the court in that case are noted here:

"It is true that the judicial power of this court was created by the constitution, but upon coming into being under the constitution, this court came into being with

inherent powers. Among the inherent powers is the power to admit to practice, and necessarily therefrom the power to disbar from practice, attorneys at law. . . .

"Under the statutes of this state a comprehensive system has been adopted with reference to the admission, suspension, and disbarment of attorneys. *The power to admit, so far as the statutes of this state are concerned, is vested in the supreme court.* The cases are fairly uniform upon the proposition that admitting to practice, suspending, and disbarring are judicial functions. The legislative power, in the interest of uniformity of standard and to remedy and prevent mischiefs in the profession, may regulate and restrict this power, but cannot take it away. It may provide machinery for the administration of the regulation provided by the legislature, as in carrying into effect such regulations some agency is necessary. In this instance it has provided the machinery and agency of the state board of law examiners. This board has, as urged in several of the arguments before us, been granted powers which partake of the nature of legislative, administrative or executive, and judicial. Certainly it is judicial power that is conferred when it is given the power to hear and determine the right of a person to continue the practice of law, and it not only hears and determines the right of a person to practice law, but it initiates complaints against such persons, which is the function of an administrative officer. These functions, it has been urged, have been combined in the state board of medical examiners, in the state board of dental examiners, and in other such boards, and their powers and functions have been upheld. But those professions and occupations are not filled by persons who are solely and exclusively officers of the court and under the control and regulation of the courts. The boards regulating them are administrative boards with some incidental quasi-judicial powers which cannot be exercised by them finally but are subject to review by the courts, and a review by the courts in those cases must go before a court of original and general jurisdiction; to wit, the superior courts. It is obvious that the board of law examiners has been created a sort of inferior court, inferior only to this court, for a review is provided for from that board to this court only.

"These functions being essentially judicial and inherent in the courts, we are of the opinion that the legislature has attempted to create a judicial tribunal which, at the same time, has administrative and delegated legislative powers.

*Such a system is not warranted under our constitutional form of government."* (Italics ours.)

The *Bruen* case is admirably reviewed by Federal District Judge J. Stanley Webster, sitting as a member of the circuit court of appeals for the ninth circuit, in *McVicar v. State Board of Law Examiners*, 6 F. (2d) 33. Judge Webster points out that, following the rendition of the opinion in the *Bruen* case, *supra,* this court decided *In re Gill,* 104 Wash. 160, 176 Pac. 11, *In re Mills,* 104 Wash. 278, 176 Pac. 556, and *In re Ward,* 106 Wash. 147, 179 Pac. 76, and further holds that Laws of 1921, chapter 126, p. 417, removed the objectionable features of the 1917 statute relating to the powers of the state board of bar examiners in disposing of applications for admission to practice law. Pertinent to our present inquiry is the following language in the *McVicar* case, *supra:*

"From this it will be seen that the court regarded the board as merely an 'intermediary agency' for the taking of evidence and reporting thereon, and that the order finally entered reflected the independent judgment of the court, uninfluenced either in whole or in part by the action taken by the board."

Continuously through the years and as late as August, 1945, in *In re Levy,* 23 Wn. (2d) 607, 161 P. (2d) 651, this court has adhered to the rule that the inherent and exclusive power of admission to practice law rests with the court itself and not with the Washington state bar association or any other agency of the state of Washington. The language used by Judge Robinson, the writer of the opinion in that case, has force in our present discussion:

"We find, upon an examination of the authorities, that they are almost unanimously in accord with the following statement found in *Brydonjack v. State Bar,* 208 Cal. 439, 281 Pac. 1018, 1020, 66 A. L. R. 1507:

" 'Admission to practice is almost without exception conceded everywhere to be the exercise of a judicial function, . . . Admissions to practice have also been held to be the exercise of one of the inherent powers of the court. (*In re Bruen,* 102 Wash. 472 [172 Pac. 1152]; *In re Chapelle,* 71 Cal. App. 129 [234 Pac. 906].)' "

The opinion cites with approval *In re Day,* 181 Ill. 73, 54 N. E. 646, 50 L. R. A. 519, regarded in many of the decisions of the country as the leading case. The particular language referred to in the *Day* case is as follows:

" 'The fact that the legislature may prescribe the qualifications of doctors, plumbers, horseshoers and persons following other professions or callings not connected with the judicial system, and may say what shall be evidence of such qualifications, can have no influence on this question. A license to such persons confers no right to put the judicial power in motion or to participate in judicial proceedings. The attorney is a necessary part of the judicial system, and his vocation is not merely to find persons who are willing to have lawsuits. He is the first one to sit in judgment on every case, and whether the court shall be called upon to act depends on his decision. It is our duty to maintain the provision of the constitution that no person or collection of persons, being one of the departments of the government, shall exercise a power properly belonging to another, and if the legislature by inadvertence, as in this case, assumes the exercise of a power belonging to the judicial department, it should only be necessary to call its attention to the restraint imposed by the constitution.' "

In the *Levy* case, which was consolidated for disposition in this court with a similar application on the part of one Warnock, we note that no application for extraordinary legal remedy against the Washington state bar association was sought, but—and very properly, we think—original applications for admission to the bar were filed in this court by Levy and Warnock. This procedure should have been followed in the instant case. Instead, we find a show cause order issued in this case, upon an application for writ of certiorari to the Washington state bar association, requiring that organization to show cause why Colonel Laughlin had not been admitted to the practice of law in this state. The order reads:

"WHEREAS, it has been made to appear by application and affidavit of relator for an order to show cause why a writ of certiorari should not be granted, a copy of which is attached hereto, and made a part hereof, *that relator made application for admission to the bar of this court upon motion and that such application was denied by respondent,*

and it being alleged that the action of respondent with respect thereto is based upon erroneous findings of fact and erroneous application of the rules of respondent applicable to such petitions, and it appearing from said affidavit and application that there is no plain, speedy and adequate remedy at law and that an order to show cause should issue herein, Now THEREFORE,

"IT IS ORDERED that the Washington State Bar Association show cause, if any it has, before this court on the 4th day of September, 1946, at the hour of nine o'clock a. m. why a writ of certiorari should not be granted and to certify and return to this court a full, true and complete transcript of the records, testimony, orders and proceedings pertaining to the application of relator to become a member of the bar of this state and the action and ruling of respondent thereon in order that the same may be reviewed by this court;

"IT IS FURTHER ORDERED that a copy of relator's application and supporting affidavit, together with a copy of this order be served upon the respondent, Washington State Bar Association, within seven days from date of this order and a copy of relator's brief be served upon the Washington State Bar Association at least 21 days before the date fixed for hearing therein, respondent to serve and file answering brief on or before August 21, 1946." (Italics ours.)

In our present inquiry, we disregard the form of Colonel Laughlin's application for writ of certiorari and consider it as an original application requesting this court to enter an order admitting him to the practice of law in the state of Washington upon motion and without examination.

The facts supporting his application are undisputed. He graduated from the university of South Dakota law school in June, 1914, and was admitted to the bar of South Dakota on or before July, 1914. Immediately thereafter, he entered upon the practice of law within the the state of South Dakota. After three and one-half years of practice, he entered the United States army as a commissioned infantry reserve officer. This was on December 15, 1917.

In July, 1920, *subsequent* to the termination of World War I, he was commissioned as a regular army officer and, after appointment as a regular, he was ordered to the territory of Hawaii. Shortly after his arrival there, he was assigned to the judge advocate's division at Scofield bar-

racks. This assignment was based, in part, upon Colonel Laughlin's legal education and his previous experience of three and one-half years' practice of law in South Dakota. While in Hawaii, Colonel Laughlin, according to his affidavit, tried approximately five hundred general court martial cases "involving nearly every crime."

In April, 1925, Colonel Laughlin was relieved from further duty in Hawaii and returned to the continental United States. His service with the judge advocate's division in Hawaii covered a period of over four and one-half years. Upon his return from foreign service, he was ordered to duty with the judge advocate general, war department, Washington, D. C. He was assigned to the patent section and, thereafter, for eight years, he engaged in the practice of patent law in behalf of the secretary of war. He participated in the trial of numerous important patent cases.

From 1932 to 1935, a term of three years, Colonel Laughlin was judge advocate at Wright field, Dayton, Ohio. He acted as legal adviser to the commanding general concerning all contracts, sales, and procurement for the air corps. He was also patent section adviser for Wright field and Patterson field.

From 1935 to 1937, Colonel Laughlin was judge advocate to the chief of air corps, war department, Washington, D. C., and, as a judge advocate, had control over all air corps patent matters. This work involved interferences in the United States patent office and the perfecting of appeals in the United States court of customs and patent appeals.

From 1937 until 1939, a period of two years, he was a member of the civil affairs section of the judge advocate's office. This section prepared legal opinions for the secretary of war on matters which related to the laws of the forty-eight states, army regulations, and Federal law.

In 1939, he requested and was transferred to duty with troops at Fort Lewis, Washington, as division judge advocate of the third infantry division. Later, he served as corps judge advocate of the ninth army corps. From August, 1939, to January, 1943, a time space of approximately three and one-half years, he served at Fort Lewis

in the judge advocate's division. On January 14, 1943, he became army judge advocate of the second army and was stationed at Memphis, Tennessee. He served in this capacity for one and one-half years, until June, 1944. Thereafter, Colonel Laughlin served overseas as army judge advocate in New Guinea, the Philippine Islands, and Japan for more than one and one-half years and until January 3, 1946, when he was hospitalized aboard a United States army hospital ship at Tokyo, Japan. Subsequently, he was transported to the United States.

Colonel Laughlin has served in the United States army continuously since December, 1917, a period of *twenty-nine years.* Since 1920, he has been and still is a commissioned officer in the regular army.

As previously stated, he was admitted to the practice of law in South Dakota in July, 1914. Since then, he has not been admitted to the bar of any other state. He was a recognized member of the South Dakota bar from 1914 until the passage of the integrated bar act in 1931, and from that time has been a registered member of the South Dakota bar.

With the permission of the secretary of war, the relator, during his years of service, accepted fees for consultations concerning patents in several states other than South Dakota and in the District of Columbia. He has also received fees for his participation in patent litigation.

Colonel Laughlin became a resident of the state of Washington, by declaration, on December 31, 1942. Since then, he has voted in this state.

His first application for admission to the bar was filed with the board of governors of the Washington state bar association in October, 1943. Since that time, he has twice personally appeared before the board and furnished oral testimony and written evidence supporting his application. At these hearings, the inquiry of the board was directed to whether or not the evidence submitted showed compliance with Rule III of the Rules for Admission to Practice, approved by this court pursuant to Laws of 1933, chapter 94, p. 397, effective August 1, 1938, and an amendment to which was adopted by this court on October 16, 1945 (23 Wn. (2d)

xvi). No substantial distinction between the qualifications required under the original Rule III and the amendment thereto exists. The applicable portion of the rule, as amended, reads as follows:

"Every applicant who applies for admission based upon his prior admission to the bar of another state or territory and practice therein, shall file with the executive secretary of the state bar with his application: (1) a certificate from the clerk or other officer of the highest court of record of such state in which he has previously been admitted, or from the clerk of the court of such state by which attorneys are admitted, under the seal of the court, showing that the applicant has been admitted to, and is entitled to practice in such state and the date of his admission and (2) satisfactory evidence that the applicant has been actively engaged in practice in such state or has held a judicial position therein or has been engaged in the teaching of law in an approved law school therein for a total period of at least five years and showing the period of time during which said applicant was actually engaged in practice or was holding such judicial or teaching position and (3) a certificate from the chief justice or other member of such court, under the seal of the court, certifying that the applicant is in good standing at the bar of the court and is an honorable and worthy member of the profession and (4) if the applicant comes from a place where there is a local bar association, a recommendation from the president and secretary of such association."

On each of his appearances before the board of governors, Colonel Laughlin's application for admission to practice was denied by that agency for the reason that he failed to submit proof that, following his admission to the bar of South Dakota, he was actively engaged in practice in such state or was holding a judicial position therein or was engaged in the teaching of law in an approved law school for a total period of at least five years, and showing the period of time during which he was actually engaged in practice or was holding such judicial or teaching position.

There is no claim on the part of Colonel Laughlin that he ever held a judicial position in South Dakota or was engaged in teaching law in an approved law school in that state. His main contention is that he has practiced law for more than

five years in South Dakota and is, therefore, qualified for admission to the bar in this state. The second contention which he urges is that, having actively engaged in the practice of law in South Dakota for three and one-half years and having performed specialized legal service in other sections of the country during his tenure as an officer in the judge advocate's division of the United States army, the two periods of practice, if "tacked" together, would constitute more than five years of actual practice of the law.

■ The language of the rule is clear. To qualify for admission under its terms the showing made must embrace " . . . satisfactory evidence that the applicant has been *actively* engaged in practice in such state . . . for a total period of at least five years and showing the period of time during which said applicant was *actually* engaged in practice . . . " (Italics ours.)

Relator has satisfactorily proved that he was *actively* and *actually* engaged in the practice of law in South Dakota from the date of his admission to the bar in that state until the time of his order to military duty in December, 1917. This period covers three and one-half years. The burden is upon him to prove that he has *practiced* in such state for the balance of the required period, namely, one and one-half years.

"In the event of the failure or refusal of an applicant to furnish any information or proof, or to answer any interrogatory of the board pertinent to the pending application, the board may deny the application. . . . " Rule II, Rules for Admission to Practice, 193 Wash. 69-a.

Colonel Laughlin claims that he has satisfactorily proved this by setting out various types of legal work in which he engaged from time to time, in the state of South Dakota, during the periods 1917 to July, 1920, and 1929 to 1940. As indicated, Colonel Laughlin, when ordered to active duty in the United States army as a reserve officer in the infantry in December, 1917, had been actively engaged in the practice of law in the state of South Dakota for a period of three and one-half years. At that time, he left his law office and was, thereafter, absent from South Dakota except when

later he returned on leave for temporary periods. He states in his affidavit supporting his application filed in this court:

"That affiant has previously detailed to the Board of Governors his practice in South Dakota subsequent to December, 1917, mentioning specifically the closing of his father's estate, settlement of choses in action pertaining thereto and actions to quiet title therein involved, respecting all of which your affiant was not a party in interest."

This statement is supported by the affidavits of two members of the state bar of South Dakota, which, in their pertinent portions, we set forth:

The affidavit of Otto B. Linstad recites:

"It is known generally among the Bar that while in the Army, Mr. Laughlin continued carrying on with law matters here, especially in connection with the extensive interests of the Laughlin family, associating with him one Frank F. Aplan, a young attorney practicing widely here and at Ft. Pierre, the community across the Missouri river from this city of Pierre. This practice consisted mostly, I believe, of action to quiet titles to real estate owned either directly or indirectly by the Laughlin family.

"That shortly after November 1929, attorney Aplan discontinued practice of law here and departed for parts unknown to affiant, leaving Robert Virgil Laughlin to continue the completion of matters in which quieting title actions had been commenced, and in this work Laughlin utilized the friendly, and sometimes employed, assistance of other attorneys residing here.

"Along about March 1940, affiant was solicited to give some assistance in the completion of title quieting actions which had been commenced in November 1929, in which twenty-five defendants were named, necessitating long and extensive search, negotiations and settlements, and in which matter Mr. Laughlin had carried on alone since Mr. Aplan's departure, doing the requisite law work, and preparing the matter for final adjudication by the Court. The assistance of affiant in the final completion of this matter was due to the necessary absence from Pierre, South Dakota, by Mr. Laughlin, in his Army duties. Although this was a case with considerable complications, involving some twenty-five defendants, spanning a term of some ten years, affiant found it necessary to make only a $50 service charge, due to the fact that the bulk of the law work involved had previously

been done by Mr. Laughlin and although I considered him my associate in the termination of the case, the facts are that I was acting principally as his associate and assistant and my help was only necessary due to Mr. Laughlin's absence on Army duty."

The affidavit of Glenn W. Martens recites:

"That your affiant is and has been well and personally acquainted with Robert Virgil Laughlin for more than thirty-five years last past. That he knows that the said Robert Virgil Laughlin is a graduate of the College of Law of the University of South Dakota, and that immediately thereafter he engaged in the practice of law at Pierre, South Dakota, subsequently opening a law office at Tripp, South Dakota, where he continued the practice of law until he entered the United States Army. During the time that he was located at Tripp, South Dakota and after his entry into the United States Army during World War I, he continued to practice law at Pierre, South Dakota, completing unfinished business and the carrying on of new business. That your affiant knows of his own knowledge that Robert Virgil Laughlin, as an attorney, was interested in and conducted legal business in the City of Pierre, South Dakota during the years 1928 and 1929. That this knowledge is gained because of the fact that one Frank F. Aplan, a practicing attorney at Pierre, South Dakota, and at Fort Pierre, South Dakota, was employed in the office of Martens & Goldsmith and as such handled litigation in which Robert Virgil Laughlin was interested as the attorney, and that Mr. Aplan, who terminated his employment with the firm of Martens & Goldsmith on January 1, 1929, was associated with said Robert Virgil Laughlin in certain litigation which continued until, at least, 1939.

"That the said Robert Virgil Laughlin discussed certain litigation which he was handling with your affiant intermittently during the years 1929 to 1939. That upon numerous occasions when he was on leave of absence from the Army, with which he has served continuously as a regular Army officer since October, 1920, and prior thereto between 1917 and 1920, when he was serving in a temporary capacity as a reserve officer, he discussed with your affiant pending matters of litigation in which he was interested as an attorney and in which your affiant was interested as an attorney, and at least, on one occasion during said period, he associated himself with your affiant in certain litigation in which your affiant was interested, but that on investigation your affiant

finds that his name was not entered of record as an attorney of record, notwithstanding the fact that he was acting in that capacity, and this was due to the fact that the pleadings had been prepared prior to his association with your affiant.

"That your affiant was well and personally acquainted with both of the parents of said Robert Virgil Laughlin and knows that he was also interested as an attorney in various matters pending involving the estates and property rights of his said parents in disposing of actions and causes of action pending in this jurisdiction."

Relator has made no actual showing that he was granted leave between 1917 and October, 1920, for the purpose of dispatching legal business in South Dakota. However, in fairness to him, we accept the averment that he visited the state on authorized leave from the army from time to time during the years 1917 to 1920.

He contends that this business, transacted from time to time while on leave, constituted the "practice of law" and, therefore, that he has proved that he has been engaged in the practice of law for more than five years in the state of South Dakota. Our Rule III requires that there shall be satisfactory proof that the applicant has been *actively* engaged in practice and that he shall show the period of time during which he was *actually* engaged in practice.

Colonel Laughlin closed his law office in South Dakota shortly after his entrance into the United States army in 1917, and it is undisputed that he has not maintained an office in that state during the past thirty years.

As was said in *People v. La Barre*, 193 Cal. 388, 395, 224 Pac. 750:

"The phrase 'actual practice' is open to but one construction. It is the opposite of casual or occasional or clandestine practice and carries with it the thought of active, open and notorious engagement in a business, vocation, or profession."

7 C. J. S. 703, § 3-g, defines the practice of law as follows:

"As generally understood, it is the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity with the adopted rules of procedure; but it is not confined to performing services in an action or proceeding pending in courts of justice, and, in a larger sense, it includes legal advice and

counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court."

See, also, *State ex rel. Boynton v. Perkins,* 138 Kan. 899, 28 P. (2d) 765; *Eley v. Miller,* 7 Ind. App. 529, 34 N. E. 836.

In our own case of *State v. Chamberlain,* 132 Wash. 520, 232 Pac. 337, we defined the practice of law as follows:

"While we lack an authoritative definition of practicing law, we may say here that, so far as this jurisdiction is concerned, it means doing or practicing that which an attorney or counsellor at law is authorized to do and practice."

Webster's New International Dictionary (2d ed.) defines the word "practice" as follows:

"To do, perform, carry on, act, or exercise; now, except rarely, to do or perform often, customarily, or habitually; to make a practice of; . . .
"To exercise, follow, or work at, as a profession, trade, art, etc.; as, to *practice* law or medicine."

The same work defines the word "actual" as follows:

"Existing in act or reality; really acted or acting or being; in fact; real;—opposed to *potential, possible, ostensible, virtual, speculative, conceivable, ideal, theoretical, hypothetical,* or *nominal;* . . ."

The same authors define the word "active" as follows: "Given to action; engaged in action; energetic; diligent; busy; . . ."

█ It is clear from the facts set forth in the record before us that Colonel Laughlin was not engaged in the *actual* and *active* occupation of the practice of law after he terminated his three and one-half years of practice in the state of South Dakota. From that time on, he was a soldier, an infantry officer, in a military profession, and, under the most favorable interpretation to be given his claim of performance of legal work between 1917 and 1920 in South Dakota, we are forced to conclude that these were merely occasional and infrequent acts performed at such times as the army would permit him to take brief leaves of absence. His correspondence with clients concerning legal matters during this period does not materially add to the sporadic and irregular

character of the legal work which he claims to have performed.

"An 'actual practice' requires, and must command, a substantial portion of the working time of a practitioner." *In re Pierce,* 189 Wis. 441, 452, 207 N. W. 966.

In 1920, Colonel Laughlin was sent overseas, where he served for five years, after which time he returned to the United States. Except for this five-year period overseas, he supports his contention of having engaged in the practice of law in South Dakota during the remaining twenty years, 1925 to 1946, with the affidavits of Messrs. Linstad and Martens, heretofore set forth. His own testimony, given at the hearing on his application before the board of governors of the Washington state bar association, should be considered in this connection:

"METZGER [president of the bar association]: . . . Since 1917, what is the longest period of time you were in South Dakota continuously? LAUGHLIN: Ten days to two weeks. METZGER: How many different times in that period of twenty-nine years would you say you returned to South Dakota? LAUGHLIN: Ten or twelve times. METZGER: That is to say, you were there as often as once in every two years? LAUGHLIN: Yes, except that I was outside of the United States three years at one time—from 1922 to 1925 when I was in Hawaii. Up to 1940, or twenty-three years, subtracting the three years in Hawaii, or for twenty years, I was in South Dakota each one of those twenty years. I was in the state at least once during those years and on ten or twelve occasions I must have remained for ten days to two weeks. METZGER: Other times for shorter periods? LAUGHLIN: Yes, sir. METZGER: I assume you were there at different times of the year, sometimes in the summer, sometimes in the winter. LAUGHLIN: Yes, sir. METZGER: You never were there long enough to institute and prosecute to completion any law suit of any kind? LAUGHLIN: That's right. METZGER: During that period was there any writ issued on which your name appeared as attorney of record? LAUGHLIN: No, sir. METZGER: You maintained no law office for the practice of law? LAUGHLIN: No, sir. METZGER: In 1920 you accepted a commission in the regular army and have held that commission ever since? LAUGHLIN: Yes, sir. METZGER: There is one thing which intrigues me. In the affidavit you file here

Colonel, you make what is to me a rather peculiar statement, in that you say you 'have engaged in the practice of law in the state of South Dakota continuously from 1917 until approximately June of 1940'. Then you say 'as evidenced by the affidavits of Glenn Martens and Otto B. Linstad'. LAUGHLIN: Complete examination of the record permits me to make a technical statement that I have engaged in the practice of law as evidenced by the affidavit attached."

In our opinion, these widely spaced and brief visits to the state of South Dakota by the applicant and the meager contacts made by him in connection with patents or other legal work fall far short of the requirements demanded by *actual* and *active* participation in the practice of the law. In fact, it is not practice of the law in any accepted sense, and it shows no intent on the part of the applicant to engage in actual practice. Colonel Laughlin had chosen his profession in 1920 when he left the practice of law and took up the profession of arms. He remained in the military profession until 1946. It might truly be said that he was actually and actively engaged in the business of being an officer in the United States army, for this is the profession to which he has devoted his entire time and attention in various parts of the world for more than a quarter of a century.

Relator further contends that his services with the judge advocate's division of the army in various jurisdictions outside of South Dakota should be tacked on to his three and one-half years of practice in that state, thereby qualifying him for admission under the five-year rule. Our Rule IV permits tacking. It provides:

"Admission to practice and continuous practice or the holding of a judicial or law teaching position *in two or more states* for a total period of at least five years shall be equivalent to such admission and practice in one state." (Italics ours.) 193 Wash. 71-a.

The difficulty with relator's contention in this respect is that he has failed to produce satisfactory evidence showing a tacking together of periods of legal practice which would bring his case within our Rule IV. The language of the rule is clear, and its application to the facts before us is likewise

clear. The relator concedes that he has never been admitted to practice and thereafter continued to practice law in any state other than South Dakota, and there is no evidence tending to show that he served in the judge advocate's division in the state of South Dakota, where he was at one time a registered member of the bar. The relator's interesting military legal experience in the United States undoubtedly constitutes highly specialized training, but it does not meet the requirements of Rule IV and, therefore, presents no reason for granting the application for admission which is presented to us in this proceeding.

█ Finally, Colonel Laughlin contends that his tour of duty in the judge advocate's division of the army outside of the United States, supplemented with work of a similar character within the United States, should be accepted as a substitute for the specific requirements of *actual* and *active* practice required by our Rule III. The simple and direct answer to this contention is that Rule III does not permit the substitution of any type of work for active and actual practice of the law, as required by its very rigid terms. We find authority for this position in *Henderson v. State Bar of California,* 219 Cal. 696, 28 P. (2d) 915. Henderson sought admission to practice on motion, without taking the bar examination. The pertinent language of the court's opinion is as follows:

"Inspection of the record discloses that petitioner graduated from the United States Naval Academy in 1902 and has served in the navy, holding all commissions from midshipman to captain, until his retirement in 1929; that he was graduated from the George Washington University Law School on June 23, 1925, with the degree of bachelor of laws; that from time to time he has since acted as legal adviser to the governor of the island of Guam, has served as an associate judge in the consular court at Constantinople, and has acted in a legal capacity in the judge advocate's office at Washington, D. C., and has participated as counsel in various courts-martial.

"It is apparent from the record that petitioner's practice of the law, in the main, has been carried on in and before the various courts and boards established for the purpose of exercising the very limited jurisdiction vested in naval tri-

bunals and in and before consular courts of equally limited jurisdiction. In view of this, we are unable to say that petitioner, within the meaning and intent of the rules governing admission, 'is a member of the bar of the *highest court* of a sister state, territory, the District of Columbia, or of a foreign jurisdiction where the Common Law of England constitutes the basis of jurisprudence,' and this, without attempting in any manner to minimize or deprecate petitioner's ability or learning in the law."

For the reasons set forth herein, we hold that Colonel Laughlin's application for admission to membership in the Washington state bar association without examination and upon motion must, upon the showing submitted, be denied. The writ of certiorari sought herein is likewise denied.

MILLARD, C. J., STEINERT, ROBINSON, JEFFERS, MALLERY, and SCHWELLENBACH, JJ., concur.