IN RE: CONTEMPT PROCEEDING OF TALBOT MICHAEL SMITH

No. 38

(Filed 6 January 1981)

1. Attorneys at Law § 2— foreign attorney — admission to practice for limited purpose — discretionary privilege

It is not a right but a discretionary privilege which allows out of state attorneys to appear *pro hac vice* in a state's courts without meeting the state's bar admission requirements.

2. Attorneys at Law § 2— foreign attorney — admission to practice for limited purpose — no due process right

The right to appear *pro hac vice* in the courts of another state is not a right protected by the Due Process Clause of the Fourteenth Amendment.

3. Attorneys at Law § 2— foreign attorney — admission to practice for limited purpose - requirement of local counsel - waiver not permitted

A trial judge cannot waive the requirement of G.S. 84-4.1(5) that local counsel be associated before an out of state attorney is admitted to limited practice in the courts of this State.

4. Attorneys at Law §2; Contempt of Court § 2.2— failure of foreign attorney to appear for trial — contempt of court — absence of valid admission for limited purpose

An out of state attorney could not be held in and punished for willful contempt of court for failure to comply with an order of the trial court that he appear as an attorney in a criminal case where there had been no general appearance by local counsel as required by G.S. 84-4.1 and the out of state attorney thus never acquired eligibility to appear in the case and was never an attorney in the case admitted to limited practice in N. C.

Justices COPELAND and BROCK took no part in the consideration or decision of this case.

ON discretionary review of decision of the Court of Appeals, 45 N.C. App. 123, 263 S.E.2d 23 (1980), affirming judgment of *Ferrell, J.,* entered at the 20 March 1979 Session of WAYNE Superior Court.

This criminal contempt adjudication against Talbot Smith, an attorney licensed to practice law in the State of Michigan, arises out of the prosecution of Leslie "Ike" Atkinson and others for violation of the controlled substances laws of North Carolina. The chronology of the case follows.

On 27 March 1978, Atkinson, then serving a forty-four year

sentence in a United States penitentiary, was indicted by the Grand Jury of Wayne County for various drug offenses. Atkinson wanted Talbot Smith to represent him. On 26 June 1978, Talbot Smith and Stephen A. Kermish, a Georgia attorney, appeared before Judge Ferrell in chambers to discuss pretrial discovery.

Atkinson was arrested, served with a copy of the bill of indictment, given his first appearance before a district court judge and placed in custody in Central Prison on 6 September 1978. At Atkinson's arraignment on 11 September 1978, Kermish appeared for the limited purpose of contesting the jurisdiction of North Carolina over Atkinson. Talbot Smith was not present. Counsel for a codefendant told the court Talbot Smith had planned to appear on behalf of Atkinson but his airplane had been delayed. Atkinson stated in open court that Talbot Smith was his lawyer. After an evidentiary hearing, the court concluded it had jurisdiction over Atkinson and continued the arraignment until 13 September 1978. At the 13 September 1978 arraignment, Talbot Smith announced he was Atkinson's attorney and requested a continuance of ten working days in which to obtain local counsel to move his admission to the bar. He further moved the court to set a new evidentiary hearing on the question of jurisdiction on the grounds that Kermish had no authority to litigate the question of North Carolina's jurisdiction over Atkinson. This latter motion was denied. The arraignment was continued until 2 October 1978 to allow Talbot Smith to obtain local counsel to move his admission to the bar.

On 2 October 1978, Stephen Smith of the Wake County, North Carolina Bar appeared with Talbot Smith in the case. Stephen Smith filed a notice of limited representation for the purpose of moving the court to continue the case for thirty days to allow Talbot Smith to associate local counsel. Stephen Smith told Judge Ferrell he was not retained as local counsel. Talbot Smith told the court he was ready to proceed with the filing of motions but was as yet unable to obtain the statutorily required local counsel. The court granted a continuance of two days for the requested purpose. The court advised Atkinson and his counsel that standby counsel would be appointed in the event counsel of his choice was not available. On 4 October 1978 when Atkinson was again called for arraignment, he had no counsel present. Atkinson stated he was not indigent and did not want court appointed counsel. He signed a waiver to that effect. The court entered a plea of not guilty for defendant and directed the district attorney to serve discovery materials upon defendant, which he did.

At the next session of court on 30 October 1978, Stephen Smith, who again filed a notice of limited representation, appeared on behalf of Atkinson. Talbot Smith and Richard Barry Mazer of the California Bar were also present. When Stephen Smith attempted to defer to Talbot Smith on a question, the court refused to hear Talbot Smith until he was properly qualified to appear in the case. Stephen Smith then orally moved the court to admit Talbot Smith and Mazer to practice in the courts of this State for the sole purpose of representing Atkinson. A written motion was tendered on behalf of Talbot Smith. Judge Ferrell ruled the motions did not comply with the requirements of G.S. 84-4.1 and denied them. The next day Stephen Smith filed various written motions on behalf of Atkinson including a written motion pursuant to G.S. 84-4.1 seeking to permit Mazer and Talbot Smith to practice in North Carolina for the limited purpose of representing Atkinson. both out-of-state attorneys filed signed statements in accordance with G.S. 84-4.1(3) which recited in pertinent part:

> I hereby state that unless permitted to withdraw sooner by order of the Court, I will continue to represent my client in this proceeding until the final determination thereof, and that with reference to all matters incident to this proceeding, I agree that I will be subject to the orders and amenable to the disciplinary action and the civil jurisdiction of the General Court of Justice and the North Carolina State Bar in all respects as if I were a regularly admitted and licensed member of the Bar of North Carolina in good standing.

Stephen Smith moved the admission of Talbot Smith and Mazer to the Bar of this State. The court neither granted nor denied the motion; it reserved ruling and set a hearing on various motions for 27 November 1978 and a trial date of 3 January 1979.

On 15 November 1978, Stephen Smith filed on behalf of Atkinson a "Renewed Motion for Limited Practice and Motion for Continuance of Trial" and a "Request for Immediate Hearing of Renewed Motion for Limited Practice and Motion for Continuance of Trial." These papers recited (1) Talbot Smith and Mazer are willing to enter an appearance on behalf of Atkinson; (2) Stephen Smith will not enter a general appearance until paid his trial retainer; (3) Talbot Smith and Mazer will not begin to prepare for

trial until their motions to represent Atkinson are formally allowed; (4) these motions "are conditional upon the court continuing the trial of the case for a minimum of eight weeks so that said attorneys [Talbot Smith and Mazer] may have opportunity to properly prepare for trial after their admission to this case"; and (5) said motions should be deemed withdrawn by Talbot Smith and Mazer if the court will not-continue the trial for a minimum of eight weeks from the date it rules on the motions to be admitted to practice.

Stephen Smith appeared before the court to argue various pretrial motions on 27 November 1978. The question of the admission of Talbot Smith and Mazer arose. Judge Ferrell stated he would not admit them until local counsel had made a general appearance. He stated admission without local counsel being retained was not possible under G.S. 84-4.1, "although it's my intention likely to do so as I have indicated to you in a telephone conversation or conversations about this matter." On 29 November 1978, Stephen Smith advised Judge Ferrell by letter that "[b]ecause of insurmountable differences between Talbot Smith and myself, my representation of Leslie Atkinson has been terminated effective today."

On 6 December 1978, Judge Ferrell wrote Atkinson a letter with carbon copies to Talbot Smith, Stephen Smith and Mazer. Judge Ferrell expressed his concern that Atkinson have counsel at trial. In part, he stated:

> I am concerned that your Sixth Amendment Constitutional rights and Due Process guarantees are protected to the fullest extent. Since you told me in open court that you desire Mr. Talbot Smith and Mr. Richard Mazer to represent you, and due to the nature and seriousness of the charges against you, and, since Mr. Talbot Smith obviously has expended considerable efforts over a long period of time in preparing your cases for trial, I am, in my discretion, now waiving the requirements of North Carolina counsel, and do now hereby allow the Motion of Mr. Talbot Smith and Mr. Richard Mazer to appear for you and represent you in the trial of your cases.
>
> As you are aware, the cases are scheduled for trial in Wayne County, North Carolina beginning January 3, 1979. You are hereby advised, therefore, that the cases will stand for trial at that time with counsel of your

choice, Mr. Talbot Smith and Mr. Richard Mazer now being formally admitted to the North Carolina Court for the general purpose of representing you at the trial of your cases, and any subsequent proceedings.

I am by copy of this letter addressed to your counsel at the addresses listed in their petitions advising them of the ruling of the court, and instructing them that the cases will be called for trial at the appointed session of court beginning January 3, 1979.

In a letter dated 12 December 1978, Mazer advised Judge Ferrell the case must be continued for at least eight weeks, otherwise he and Talbot Smith would be unable to represent Atkinson due to insufficient time to prepare for trial. Judge Ferrell wrote in reply on 19 December 1978:

Any motion to continue the case of Mr. Atkinson will be determined in open court on January 3, 1979. As you know, the cases were scheduled for trial at that time. Should the cases not be continued, you and Mr. Smith, pursuant to your affidavit to remain in the case, will be expected to represent Mr. Atkinson on the trial of his cases commencing January 3, 1979.

Mazer wrote Judge Ferrell on 26 December 1978 that he and Talbot Smith would undertake to represent Atkinson only if given eight weeks to prepare for trial. He further advised they would not appear for the 3 January 1979 trial unless the trial was continued for eight weeks.

When Atkinson's case was called on 3 January 1979, Talbot Smith and Mazer were not present. Judge Ferrell appointed John Duke of Wayne County, North Carolina Bar as standby counsel for Atkinson pursuant to G.S. 15A-1243. The case was concluded on 19 January 1979. Talbot Smith and Mazer did not appear. At the trial's conclusion, Judge Ferrell announced he believed Talbot Smith and Mazer to be in direct, willful and criminal contempt of court. He sent to them, by certified mail, a proposed contempt order which gave summary notice of the punishment to be imposed and informed them that he would conduct an inquiry into the matter at the end of March. In the proposed contempt order, Judge Ferrell concluded as a matter of law:

(1) Talbot Michael Smith knew of the pendency of this matter and appeared on behalf of the defendant at Sessions of Court devoted to hearing pretrial motions on June 26, 1978; September 13, 1978; October 2, 1978; and October 30, 1978.

(2) Richard Barry Mazer knew of the pendency of this matter and appeared on behalf of the defendant at a session of the Court devoted to hearing pretrial motions on October 30, 1978.

(3) Both Richard Barry Mazer and Talbot Michael Smith represented to the Court by their signed statements attached to their motion to be admitted to limited practice before the bar of the Court that:

> a. They would continue to represent their client in the proceeding until the final determination thereof or until allowed to withdraw by order of the Court.

> b. They would be subject to the orders of the Court and subject to its discipline in same manner as a regularly licensed member of the North Carolina Bar.

(4) That the Court deferred ruling on the original application for limited practice for the sole reason that local counsel had not been retained for the entire trial as required by GS 84-4.1.

(5) Leave of Court was never obtained to withdraw or modify the original motion for limited practice or the statement of counsel attached thereto and the Court never allowed said motion to be withdrawn or modified.

(6) The Renewed Motion for Limited Practice and Motion for Continuance were not signed by either Talbot Michael Smith or Richard Barry Mazer nor did said motions contain a statement signed by said parties in a form required by GS 84-4.1 although said motions were filed.

(7) GS 84-4.1(6) specifically does not deprive the court of the discretionary power to allow or reject the application of the particular out-of-state attorney, and the Court had discretionary authority to waive the requirement of local

North Carolina licensed counsel.

(8) The waiver of the requirement of associating local North Carolina licensed counsel did not in any manner abrogate or modify any of the other terms and conditions agreed to by Richard Barry Mazer and Talbot Michael Smith in their written statement.

(9) That no order of the Court was entered allowing Richard Barry Mazer or Talbot Michael Smith to withdraw as counsel of record for the defendant in this proceeding.

(10) That Richard Barry Mazer and Talbot Michael Smith were directed by the Court to be present in Court in Goldsboro, North Carolina, on January 3, 1979, when any motions for continuance would be determined.

(11) That Richard Barry Mazer and Talbot Michael Smith were advised that the Court expected them to represent defendant at the trial of his case and that this constituted a clear warning by the Court that any nonappearance by them would be improper conduct.

(12) That Richard Barry Mazer and Talbot Smith acknowledged receipt of the Court's warning and stated, in response thereto, "we shall not appear in Goldsboro on January 3, 1979."

(13) That such a response, in view of their written statement and the clear direction and warning of the Court constituted, beyond a reasonable doubt, willful, direct, criminal contempt of court as defined by GS 5A-11(a)(3), (6) & (7) and GS 5A-13(a)(3), by Richard Barry Mazer and Talbot Michael Smith which interrupted and interfered with matters before the Court in that standby counsel for defendant was required to be appointed to assist defendant on the trial.

(14) That because neither Richard Barry Mazer nor Talbot Michael Smith appeared in Goldsboro at any time after January 3, 1979, until the termination of the proceeding on January 19, 1979, and because both individuals reside outside the boundaries of North Carolina, no summary notice has been given to said individuals in

person. The Court, however, before entering this order, has caused copies thereof to be mailed to Richard Barry Mazer and Talbot Michael Smith by certified mail and they were given until sixty days from January 19, 1979, to respond thereto.

On 20 March 1979, a hearing was held on the contempt matter at which neither Talbot Smith nor Mazer was present. Thomas Loflin of the Durham County, North Carolina Bar appeared and announced he was counsel of record for the two lawyers. He made various motions on behalf of Mazer and Talbot Smith. He moved that the proceedings be dismissed for lack of jurisdiction, that Judge Ferrell recuse himself from the case, that the case be dismissed as to Talbot Smith because the record failed to show any direct, criminal contempt and that the case be dismissed as to Talbot Smith because he was not accorded procedural due process. These motions were denied.

Mazer avoided final judgment of contempt by apologizing to the court and making restitution for standby counsel fees. Judge Ferrell entered the order which he had mailed earlier finding Talbot Smith in willful and direct criminal contempt. Judge Ferrell sentenced Talbot Smith to thirty days in jail, fined him $500.00 and directed that a copy of the order be certified to the disciplinary officials of the Michigan Bar. Talbot Smith appealed to the Court of Appeals which affirmed the trial court.

The Court of Appeals reasoned that (1) G.S. 84-4.1 does not permit an out-of-state attorney to move for admission to practice in a particular case conditioned upon the court taking specific action in the case, i.e., continuing it for eight weeks; (2) Judge Ferrell's 6 December 1978 letter was a sufficient order allowing Talbot Smith's first, unconditional motion of 31 October 1978 to be admitted to practice for the limited purpose of representing Atkinson; (3) the letter of 6 December 1978 directing Talbot Smith to appear on 3 January 1979 was a lawful order inasmuch as a trial judge has the power to waive the requirement of G.S. 84-4.1(5) relating to the necessity of local counsel; (4) the trial court was correct in disregarding the conditional motion of 17 November 1978 and considering only the 31 October motion; (5) Talbot Smith's failure to appear for trial on 3 January 1979 constituted criminal contempt under G.S. 5A-11(a) (1)(3)(6)(7); (6) the trial court had personal jurisdiction over Talbot Smith and properly served him with the contempt

order pursuant to G.S. 1A-1, Rule 4(j)(1)c and G.S. 5A-15(a) by sending it by certified mail to the address given the court in his motion to be allowed to appear in the case and (7) Judge Ferrell did not err in refusing to recuse himself from the 20 March 1979 contempt proceedings.

This Court granted discretionary review.

*Loflin, Loflin & Acker by Thomas F. Loflin III and James R. Acker, attorneys for respondent appellant*

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State*

HUSKINS, Justice.

In disposing of this case, we reach only one of the issues raised in the Court of Appeals, viz: May a judge in his discretion waive the requirement of local counsel found in G.S. 84-4.1(5) when an out-of-state attorney is admitted to limited practice in this State? Our answer to this question makes it unnecessary to consider other holdings and dicta of the Court of Appeals. We hold a trial judge cannot waive the requirement that local counsel be associated before an out-of-state attorney is admitted to limited practice in the courts of this State.

[1,2] As a general rule, a regularly licensed attorney admitted to practice in one state is permitted to practice in the courts of another state in the disposition of a particular case without formal admission and license to practice in the other state. *Smith v. Brock*, 532 P.2d 843 (Okla. 1975); *Johnson v. Di Giovanni*, 347 Mich. 118, 78 N.W.2d 560 (1956); *Freeling v. Tucker*, 49 Idaho 475, 289 P. 85 (1930); *In re Pierce*, 189 Wis. 441, 207 N.W. 966 (1926). It is a custom at least as old as 1735 when Andrew Hamilton, a Philadelphia lawyer, gained special permission to appear in the New York courts to defend the right of freedom of speech and press of one John Peter Zenger. *See J. Alexander, A Brief Narrative of the Case and Trial of John Peter Zenger*, 17-26, 61 (S. Katz ed. 1963); Loyd, *Andrew Hamilton* in 1 Great American Lawyers 1, 4, 27-48 (1907). It is, however, not a right but a discretionary privilege which allows out-of-state attorneys to appear *pro hac vice* in a state's courts without meeting the state's bar admission requirements. "It is permissive and subject to the sound discretion of the Court." *State v. Hunter*, 290 N.C. 556, 568, 227 S.E.2d 535, 542 (1976), *cert. den.*, 429

U.S. 1093, 51 L.Ed.2d 539, 97 S.Ct. 1106 (1977). The right to appear *pro hac vice* in the courts of another state is not a right protected by the Due Process Clause of the Fourteenth Amendment. The Federal Constitution does not obligate state courts to grant out-of-state attorneys procedural due process in the grant or denial of their petition for admission to practice *pro hac vice* in the courts of the state. *Leis v. Flynt*, 439 U.S. 438, 58 L.Ed.2d 717, 99 S.Ct. 698, *reh. den.*, 441 U.S. 956, 60 L.Ed.2d 1060, 99 S.Ct. 2185 (1979); *Thomas v. Cassidy*, 249 F.2d 91 (4th Cir. 1957), *cert. den.*, 355 U.S. 958, 2 L.Ed.2d 533, 78 S.Ct. 544 (1958).

"It is well established that the constitutional power to establish the qualifications for admission to the Bar of this State rests in the legislature." In *re Willis*, 288 N.C. 1, 14, 215 S.E.2d 771, 779, *appeal dismissed*, 423 U.S. 976, 46 L.Ed.2d 300, 96 S.Ct. 389 (1975); *Seawell, Attorney-General v. Motor Club*, 209 N.C. 624, 184 S.E. 540 (1936); *In re Applicants for License*, 143 N.C. 1, 55 S.E. 635 (1906); *see also Baker v. Varser*, 240 N.C. 260, 82 S.E.2d 90 (1954); *State v. Ballance*, 229 N.C. 764, 51 S.E.2d 731 (1949); *State v. Harris*, 216 N.C. 746, 6 S.E.2d 854 (1940); *State v. Lockey*, 198 N.C. 551, 152 S.E. 693 (1930). The legislature fixed the conditions under which an out-of-state attorney may be admitted to practice *pro hac vice* in this State in G.S. 84-4.1 which reads as follows:

> Any attorney regularly admitted to practice in the courts of record of another state and in good standing therein, having been retained as attorney for any party to a legal proceeding, civil or criminal, pending in the General Court of Justice of North Carolina, or the North Carolina Utilities Commission or the North Carolina Industrial Commission, may, on motion, be admitted to practice in the General Court of Justice or North Carolina Utilities Commission or the North Carolina Industrial Commission for the sole purpose of appearing for his client in said litigation, *but only upon compliance with the following conditions precedent:*
>
> (1) He shall set forth in his motion his full name, post-office address and status as a practicing attorney in such other state.
>
> (2) He shall attach to his motion a statement, signed by his client, in which the client sets forth his post-office address and declares that he has re-

In re Smith

tained the attorney to represent him in such proceeding.

(3) He shall attach to his motion a statement that unless permitted to withdraw sooner by order of the court, he will continue to represent his client in such proceeding until the final determination thereof, and that with reference to all matters incident to such proceeding, he agrees that he shall be subject to the orders and amenable to the disciplinary action and the civil jurisdiction of the General Court of Justice and the North Carolina State Bar in all respects as if he were a regularly admitted and licensed member of the Bar of North Carolina in good standing.

(4) He shall attach to his motion a statement to the effect that the state in which he is regularly admitted to practice grants like privileges to members of the Bar of North Carolina in good standing.

(5) *He shall attach to his motion a statement to the effect that he has associated and has personally appearing with him in such proceeding an attorney who is a resident of this State and is duly and legally admitted to practice in the General Court of Justice of North Carolina, upon whom service may be had in all matters connected with such legal proceedings, or any discplinary maters, with the same effect as if personally made on such foreign attorney within this State.*

(6) Compliance with the foregoing requirements shall not deprive the court of the discretionary power to allow or reject the application.

(Emphasis added.) The discretionary power of the court expressed in G.S. 84-4.1(6) arises *"only* upon compliance with the . . . conditions precedent" contained in G.S. 84-4.1(1-5). Those conditions must first be met. Then and only then does the court have "discretionary power to allow or reject the application." *See also* G.S. 84-4.2.

This case centers on G.S. 84-4.1(5) which requires an out-of-state attorney to attach to his motion for admission to limited prac-

tice a statement that he has associated resident local counsel to appear with him at all times during the proceeding he seeks to enter *pro hac vice.* By implication, the statute obviously requires the out-of-state attorney to do what he has stated he will do -- that is, in fact, to associate local counsel to appear with him. This is a valid and reasonable state requirement. *Martin v. Walton,* 368 U.S. 25, 7 L.Ed.2d 5, 82 S.Ct. 1, *reh. den.,* 368 U.S. 945, 7 L.Ed.2d 341, 82 S.Ct. 376 (1961); *Bradley v. Sudler,* 172 Kan. 367, 239 P.2d 921 (1952), *later appeal,* 174 Kan. 293, 255 P.2d 650 (1953); *Arthaud v. Griffin,* 202 Iowa 462, 210 N.W. 540 (1926); *Annot.,* 45 A.L.R.2d 1065, § 2 (1956). It is a requirement our Court of Appeals has enforced with vigor in the past. *Development, Inc. v. Phillips,* 9 N.C. App. 158, 175 S.E.2d 782 (1970), *aff'd in part, rev. in part on other grounds,* 278 N.C. 69, 178 S.E.2d 813 (1971); *State v. Daughtry,* 8 N.C. App. 318, 174 S.E.2d 76 (1970). It is a rule of wide application in the various states. *See, e.g., Keogh v. Pearson,* 35 F.R.D. 20 (D.D.C. 1964); *Dorador v. State,* 573 P.2d 839 (Wyo. 1978); *Frost v. Hardin,* 218 Kan. 260, 543 P.2d 941 (1975); *Application of American Smelting and Refining Co.,* 164 Mont. 139, 520 P.2d 103 (1973); *Re New Jersey Refrigerating Co.,* 96 N.J. Eq. 431, 126 A. 174 (1924); *Anderson v. Coolin,* 27 Idaho 334, 149 P. 286 (1915).

The rule is one way for the courts to control out-of-state counsel and assure compliance with the duties and responsibilities of an attorney practicing in the courts of this State. The association of out-of-state counsel with a local attorney satisfies a reasonable interest of our courts in having a member of the Bar of our State responsible for the litigation. *See Sanders v. Russell,* 401 F.2d 241 (5th Cir. 1968); *Willis v. Semmes, Bowen and Semmes,* 441 F.Supp. 1235 (E.D. Va. 1977). Our statute is specifically designed to insure that the court has ready jurisdiction over those appearing only occasionally before it by insuring that counsel who appear regularly before it participate in the case. *See Slayman v. Steinhoff,* 185 Kan. 88, 340 P. 2d 98 (1959).

**[3]** The very wording of the statute itself impels the conclusion that the association of local counsel is a mandatory condition precedent to the admission of an out-of-state attorney to a limited appearance in the courts of this State. Even after the provisions of G.S. 84-4.1(1-5) have been complied with, the court has absolute discretion to "allow or reject the application." Unless and until subsections (1) through (5) are complied with, the court has no discretion whatever. The legislative requirement of local counsel is therefore

In re Smith

mandatory and the court cannot waive it. It has no discretion in that respect. The conclusion of the Court of Appeals to the contrary in this case is erroneous.

[4] In this case, a valid motion for limited practice and attached statement was before Judge Ferrell on 31 October 1978. On its face, it complied with all the prerequisites of G.S. 84-4.1. It included an express statement to the effect that local counsel had been associated as required by G.S. 84-4.1(5) which read as follows:

> I am associating and will have personally appearing with me in this proceeding Stephen T. Smith of Kimzey, Smith & McMillan, Raleigh, North Carolina, who is a resident of the State of North Carolina and is duly and legally admitted to practice in the General Court of Justice of North Carolina and upon whom service may be had in all matters connected with this legal proceeding, or any disciplinary matter, with the same effect as if personally made on me within this State.

The record discloses that this motion was not allowed, apparently because Stephen Smith of the Wake County, North Carolina Bar had not been retained generally. A general appearance by local counsel is required by G.S. 84-4.1. Absent such appearance by local counsel, Talbot Smith never acquired eligibility to appear in the case and therefore was never an attorney in the case admitted to limited practice in North Carolina. Under those circumstances, Talbot Smith could not be held in and punished for direct and willful contempt of the court. Judge Ferrell was without power to order him to appear as attorney in the Atkinson case. The "order" to that effect was a nullity. Disobedience of an order made without, or in excess of, jurisdiction is not punishable as contempt. *State v. Black*, 232 N.C. 154, 59 S.E.2d 621 (1950); *see also* 17 Am. Jur., 2d, Contempt, § 42, and cases cited in footnote 9; 17 C.J.S., Contempt § 14.

For the reasons stated the contempt order against Talbot Smith, who was never properly admitted to practice *pro hac vice* before the courts of this State, is dismissed. The decision of the Court of Appeals is

Reversed.

Justices COPELAND and BROCK took no part in the consideration or decision of this case.