KIMBERLY S. SISK, Individually and as Guardian ad Litem of SLADE AXEL SISK, a minor v. TRANSYLVANIA COMMUNITY HOSPITAL, INC.; ABBOTT LABORATORIES; and ABBOTT LABORATORIES, INC.

No. 67PA09

(Filed 17 June 2010)

**1. Attorneys— pro hac vice admission—revocation—court's discretion**

N.C.G.S. § 84-4.1 gives the trial court discretionary authority to grant *pro hac vice* status to an appropriately qualified attorney, while N.C.G.S. § 84-4.2 gives the court the authority to summarily revoke that status on its own motion and in its discretion. Even before the statutes were enacted, *pro hac vice* admission was treated by the Supreme Court as a privilege that the trial court has the discretion to grant, deny, or revoke.

**2. Attorneys— pro hac vice admission—revocation—ex parte contact with witness—findings supported by evidence**

Where the trial court had revoked the *pro hac vice* admission of two attorneys for *ex parte* contact with an expert in actions in another state, the court's findings about contact with the witness and prejudice to defendant Abbott were supported by the evidence.

**3. Attorneys— pro hac vice admission—revocation—discretionary authority of court**

The trial court's conclusion that it had the discretionary authority to summarily revoke the *pro hac vice* admission of two attorneys was supported by statutes.

**4. Attorneys— pro hac vice admission—revocation—ex parte contact with witness**

Where the trial court revoked the *pro hac vice* admission of two attorneys, its conclusion that *ex parte* contact with a defense expert in actions in another state was inappropriate and constitutes the appearance of impropriety was a reasoned decision supported by the findings.

**5. Attorneys— pro hac vice admission—revocation—inherent authority to discipline attorneys—not limited by State Bar**

The trial court's inherent authority to discipline attorneys is not limited by the rules of the State Bar, but the trial court may

consider the Rules of Professional Conduct when deciding whether to revoke *pro hac vice* status. The trial court's invocation of Rule 4.3 of the Rules of Professional Conduct for guidance in this case does not indicate either a misapprehension of the rule or an inappropriate reliance on it, and the conclusion that the *ex parte* contact with the defense witness constituted an appearance of impropriety and was inconsistent with the fair dealings reflected in Rule 4.3 was supported by the findings.

**6. Attorneys— pro hac vice admission revoked—plaintiff's right to select counsel—outweighed by conduct**

Where the trial court revoked the *pro hac vice* admission of two attorneys, the conclusion that the attorneys' conduct outweighed the plaintiff's right to select counsel was fully supported by the findings.

**7. Attorneys— pro hac vice admission—revoked for two attorneys for conduct of one**

The trial court's discretionary decision to revoke the *pro hac vice* admission of two attorneys was justified, even though only one attorney had *ex parte* contact with a defense witness, where both attorneys had knowledge of and approved the contact, and both intended to keep the defense expert ignorant of the possible conflict of interest.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 194 N.C. App. 811, 670 S.E.2d 352 (2009), reversing an order entered 4 December 2007 by Judge Richard L. Doughton in Superior Court, Transylvania County. Heard in the Supreme Court 17 November 2009.

*Law Office of Michael W. Patrick, by Michael W. Patrick, for plaintiff-appellee/appellant.*

*Roberts & Stevens, P.A., by James W. Williams and Ann-Patton Hornthal, for defendant-appellants/appellees Abbott Laboratories and Abbott Laboratories, Inc.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Roy W. Davis, Jr., for defendant-appellee Transylvania Community Hospital, Inc.*

SISK v. TRANSYLVANIA CMTY. HOSP., INC.

[364 N.C. 172 (2010)]

EDMUNDS, Justice.

In this case we consider whether the trial court abused its discretion when it revoked the *pro hac vice* status of two out-of-state attorneys pursuant to N.C.G.S. § 84-4.2. Recognizing the inherent power of the courts to control trials and discipline attorneys, as well as the important public interest in regulating out-of-state attorneys who practice law in this state, we hold that the North Carolina Rules of Professional Conduct do not limit the trial court's discretion to revoke *pro hac vice* status. Because we find that the trial court did not abuse its discretion, we reverse the Court of Appeals.

Shortly after his birth on 19 October 2004, Slade Axel Sisk (Slade) contracted a rare form of meningitis caused by the bacteria *Enterobacter sakazakii* (also known as *E. Sak*) and suffered permanent brain damage. On 15 February 2007, Slade's mother, plaintiff Kimberly S. Sisk, individually and in her capacity as guardian ad litem, filed a complaint in Superior Court, Transylvania County, against defendants Abbott Laboratories, Abbott Laboratories, Inc. (collectively, Abbott), and Transylvania Community Hospital, Inc. (the Hospital).

In her complaint plaintiff makes the following allegations. Slade's condition was caused by his ingestion of powdered Similac, an infant formula manufactured and sold by Abbott and provided to Slade by the Hospital. Powdered Similac is not sterile and should not have been given to Slade who, as a neonate, had an immature and compromised immune system. Although the Hospital knew or should have known the risks powdered infant formula poses to newborns, Abbott nevertheless failed to warn the Hospital that Similac could cause the type of meningitis contracted by Slade, and no defendant either informed plaintiff of the potential risks or advised plaintiff of the safe alternative of sterile liquid Similac. Plaintiff seeks compensatory and punitive damages against Abbott based on negligence, strict liability, and breach of warranty, and compensatory damages against the Hospital based on negligence.

On 9 May 2007, pursuant to N.C.G.S. § 84-4.1, out-of-state attorneys Stephen H. Meyer and Nicolas F. Stein were admitted *pro hac vice* to practice law in North Carolina for the limited purpose of representing plaintiff in her action against Abbott and the Hospital. On 17 October 2007, Abbott moved to disqualify plaintiff's out-of-state counsel because of their allegedly improper contact with one of Abbott's consulting experts.

SISK v. TRANSYLVANIA CMTY. HOSP., INC.

[364 N.C. 172 (2010)]

Plaintiff responded with a copy of an 18 October 2007 opinion and order signed by the circuit court judge presiding over *Froman v. University Medical Center*, No. 04-CI-10681 (Jefferson Cir. Ct., Ky.), a factually similar Kentucky case involving allegations of *E. Sak* contamination. In the opinion and order, the Kentucky judge denied Abbott's motion to disqualify attorneys Meyer and Stein for communicating with Abbott's consulting expert in *Froman*. According to the Kentucky court's order, the two attorneys first became aware of the identity of Abbott's expert during the course of an *E. Sak* contamination case against Abbott Laboratories captioned *Hill v. University Medical Center, Inc.*, No. 04-CI-08866 (Jefferson Cir. Ct., Ky.). At that time, Abbott had entered into an agreement with its expert to provide consulting services in *E. Sak* cases. After the *Hill* case settled, but before the order of dismissal was entered, attorney Meyer contacted Abbott's expert in reference to the *Froman* case. At the time of the initial contact, Abbott was not yet a party in *Froman*, and Meyer was unaware of the agreement between Abbott and its expert. Nevertheless, the plaintiff was contemplating adding Abbott as a defendant and Meyer deliberately failed to advise the expert that Abbott was a potential defendant. After discussing the possibility of the expert providing services for the plaintiff in *Froman*, Meyer retained the expert. As a consequence, the expert found himself on both sides in *Froman*. Despite Abbott's claim that it had lost the services of its expert as a result of Meyer's action, in its opinion and order the Kentucky trial court denied Abbott's motion for sanctions, concluding that Abbott had failed to prove that the "plaintiffs' counsel committed any knowing violation of ethical rules," nor did Abbott "demonstrate prejudice as a result of counsel's actions."

On 4 December 2007, Judge Richard L. Doughton granted Abbott's motion in the case at bar and entered an order "revok[ing] the permission to practice of Nicholas F. Stein and Stephen H. Meyer previously granted." In accordance with plaintiff's request, the trial court made findings of fact and conclusions of law. The findings of fact included the following:

4. Mr. Stein and Mr. Meyer represented the Plaintiffs in a civil action in the State of Kentucky known as *Hill v. University Medical Center, Inc. and Abbott Laboratories, Inc.*, filed in the Jefferson Circuit Court (04-CI-08866) involving *E. Sak*. In a mediation proceeding in this action, Abbott Laboratories provided to Mr. Stein and Mr. Meyer a confidential document which disclosed the identity of Abbott's previously unidentified

retained expert. At the time of this disclosure, Abbott and the retained expert had a continuing contractual relationship, although Mr. Stein and Mr. Meyer had no actual knowledge of the continuing contractual relationship.

5. Prior to the dismissal of the *Hill* action, and while the action was pending, Mr. Meyer, with the knowledge of Mr. Stein, made *ex parte* contact with Abbott's retained expert in connection with another Kentucky civil action, *Froman v. University Medical Center, Inc.* (04-CI-10681)[,] involving *E. Sak* wherein Mr. Stein and Mr. Meyer were counsel for the Plaintiffs.

6. At the time of the *ex parte* contact by Mr. Meyer with Abbott's retained expert, Abbott Laboratories was not named as a defendant in *Froman*. However, Mr. Stein and Mr. Meyer had already contemplated adding Abbott as an[] additional defendant in the *Froman* suit. Notwithstanding this contemplation, Mr. Meyer contacted Abbott's retained expert, employed him as a retained expert, and intentionally did not advise Abbott's retained expert that he was contemplating a claim against Abbott Laboratories. This conduct by Mr. Meyer was condoned by Mr. Stein who admitted in argument to this Court that "we wanted to keep him (referring to Abbott's retained expert) in the black" with regard to their contemplation of making a claim against Abbott.

7. Abbott's retained expert was an unrepresented person, likely not experienced in dealing with legal matters.

8. On February 15, 2007, this action was filed in the Superior Court of Transylvania County by Bruce E. Elmore, Jr., an attorney in good standing licensed to practice law in the State of North Carolina. On May 7, 2007, Mr. Stein and Mr. Meyer were admitted to limited practice in the State of North Carolina for the sole purpose of appearing in this action. On June 4, 2007, Abbott's counsel first learned that Abbott's retained expert had been approached by Mr. Stein and Mr. Meyer.

9. As a result of the actions of Mr. Stein and Mr. Meyer, Abbott has been deprived of the services of its retained expert and has been injured in its defense of this action.

Based upon these findings of fact, the trial court concluded as a matter of law:

## SISK v. TRANSYLVANIA CMTY. HOSP., INC.

[364 N.C. 172 (2010)]

1. Pursuant to N.C.G.S. § 84-4.2, this Court has the discretionary authority to summarily revoke the permission granted to Mr. Stein and Mr. Meyer under N.C.G.S. § 84-4.1, on its own motion and in its discretion.

2. The conduct of Mr. Stein and Mr. Meyer in making *ex parte* contact with Abbott's retained expert, without Abbott's knowledge and permission, during the pendency of the *Hill* litigation was inappropriate and constitutes the appearance of an impropriety.

3. The conduct of Mr. Stein and Mr. Meyer in contacting Abbott's retained expert, an unrepresented person, without disclosing that their interests were in conflict with Abbott, constitutes the appearance of impropriety and is inconsistent with fair dealings as reflected in Rule 4.3 of the Rules of Professional Conduct.

4. This Court has balanced the limited, but substantial right of the plaintiff to select her attorneys against the conduct of Mr. Stein and Mr. Meyer and in doing so has taken judicial notice that there are many competent and capable North Carolina lawyers who are able to proceed to trial in complicated litigation in addition to Mr. Elmore. This Court concludes that the conduct set forth above outweighs the plaintiff's right to select counsel.

Plaintiff appealed, contending that (1) the trial court erred by concluding that the conduct of attorneys Meyer and Stein violated the North Carolina Rules of Professional Conduct, and (2) the trial court's findings of fact and conclusions of law were not supported by competent evidence in the record. *Sisk*, 194 N.C. App. at 812, 670 S.E.2d at 353. On 6 January 2009, the Court of Appeals reversed the trial court's disqualification order, finding that the trial court was acting under a "misapprehension of law" when it determined that the actions taken in Kentucky by plaintiff's out-of-state counsel violated the North Carolina Rules of Professional Conduct. *Id.* at 815, 670 S.E.2d at 355.

As the Court of Appeals correctly noted, an attorney is not subject to discipline under the North Carolina Rules of Professional Conduct if the attorney's conduct conforms to the rules of the jurisdiction in which the lawyer reasonably believes the predominant effect of that conduct will occur. N.C. St. B. Rev. R. Prof. Conduct 8.5(b)(2) ("Disciplinary authority; Choice of law"), 2010 Ann. R. N.C.

759, 880.[1] Apparently assuming that the predominant effect of the conduct would occur in Kentucky, the Court of Appeals held that because counsel's behavior did not violate the rules of that state, Rule 8.5 did not allow the conduct to be subject to discipline under the rules of North Carolina. *Sisk*, 194 N.C. App. at 815, 670 S.E.2d at 355. The Court of Appeals concluded that the trial court's misapprehension "was material and changed the outcome," and therefore, "the trial court's subsequent disqualification of counsel was manifestly unsupported by reason and constituted an abuse of discretion."*Id.*

On 30 April 2009, this Court allowed both Abbott's petition for discretionary review and plaintiff's conditional petition for discretionary review as to additional issues. Before this Court, Abbott contends that the trial court did not abuse its discretion by ordering that plaintiff's out-of-state counsel be disqualified from the instant case and that the Court of Appeals failed to accord sufficient deference to the trial court's exercise of its discretion. In her conditional petition, plaintiff challenges certain findings of fact made by the trial court and also argues that the trial court erred by concluding as a matter of law that the actions of the attorneys violated the North Carolina Rules of Professional Conduct. Plaintiff further contends that, in any event, the trial court erred in revoking Stein's *pro hac vice* status for action taken solely by Meyer. This Court later allowed the Hospital to file a brief and appear at the hearing of this appeal. Because certain issues raised in plaintiff's conditional petition involve the findings of fact and conclusions of law that underlie and support the trial court's discretionary decision to revoke *pro hac vice* status, we will first address these concerns before turning to the trial court's subsequent exercise of its discretion.

**[1]** We begin our analysis by considering a trial court's power to grant and revoke *pro hac vice* status. This status "is . . . not a right but

---

1. Specifically, Rule 8.5 provides in pertinent part:

(b) *Choice of Law.* In any exercise of the disciplinary authority of North Carolina, the rules of professional conduct to be applied shall be as follows:

(1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise; and

(2) for any other conduct, the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. A lawyer is not subject to discipline if the lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the predominant effect of the lawyer's conduct will occur.

a discretionary privilege which allows out-of-state attorneys to appear *pro hac vice* in a state's courts without meeting the state's bar admission requirements." *In re Smith*, 301 N.C. 621, 629, 272 S.E.2d 834, 840 (1981). North Carolina General Statute section 84-4.1 gives the trial court discretionary authority to grant such status to an appropriately qualified attorney, while section 84-4.2 gives the trial court corresponding authority summarily to revoke an order granting *pro hac vice* admission on the court's own motion and in its discretion. N.C.G.S. §§ 84-4.1, -4.2 (2009). Even before enactment of these statutes, this Court treated admission to practice *pro hac vice* as a privilege that the trial court has discretion to grant, deny, or revoke. *See Manning v. Roanoke & Tar River R.R. Co.*, 122 N.C. 513, 516, 122 N.C. 824, 828, 28 S.E. 963, 964 (1898) ("[T]he appearance of [out-of-state] counsel is a matter of courtesy in each and every case, and on motion in each case, and only for the occasion on which it is allowed."). "Decisions regarding whether to disqualify counsel are within the discretion of the trial judge and, absent an abuse of discretion, a trial judge's ruling on a motion to disqualify will not be disturbed on appeal." *Travco Hotels, Inc. v. Piedmont Natural Gas Co.*, 332 N.C. 288, 295, 420 S.E.2d 426, 430 (1992). Our review of a trial court's decision to revoke *pro hac vice* status is no less deferential.

**[2]** Plaintiff argues that the trial court's findings of fact are not supported by evidence in the record and therefore do not in turn support its conclusions of law. In addition, and more specifically, plaintiff contends that the trial court erred by concluding as a matter of law that the conduct of the attorneys violated the North Carolina Rules of Professional Conduct. The trial court conducted a hearing on defendants' motion, during which it considered submissions of the parties and arguments of counsel. In response to plaintiff's request, the trial court made nine findings of fact and four conclusions of law in its order allowing defendant Abbott's motion and revoking the *pro hac vice* status of attorneys Meyer and Stein, as quoted in part above.

" '[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if . . . there is evidence to the contrary.' " *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 100-01, 655 S.E.2d 362, 369 (2008) (quoting *Lumbee River Elec. Membership Corp. v. City of Fayetteville*, 309 N.C. 726, 741, 309 S.E.2d 209, 219 (1983) (second alteration in original)). The trial court's findings of fact included, in relevant part, that before the dismissal of the *Hill* litigation, plaintiff's counsel made *ex parte* contact

SISK v. TRANSYLVANIA CMTY. HOSP., INC.

[364 N.C. 172 (2010)]

with Abbott's retained expert, an unrepresented person, but deliberately kept him ignorant as to potential claims against Abbott. The trial court also found that as a result of the conduct of plaintiff's counsel, "Abbott has been deprived of the services of its retained expert and has been injured in its defense of this action."

Most of the trial court's findings of fact are uncontested. However, plaintiff contends that there was no evidence to support the trial court's finding that counsel contacted Abbott's expert prior to the dismissal of the *Hill* action and insufficient evidence that counsel's conduct caused Abbott to lose the expert's help in the case at bar. As to the former claim, plaintiff argues that the parties had agreed to a dismissal in *Hill* and had swapped pertinent paperwork when the expert was contacted, but concedes in her brief that the dismissal had not been filed. Although plaintiff contends that the fact that the formality of filing occurred after the contact was immaterial, the trial court's finding of fact is supported by competent evidence.

As to plaintiff's latter claim, the exhibits before the trial court included the declaration of attorney June K. Ghezzi, who represents Abbott in *E. Sak* litigation. Attorney Ghezzi averred under oath that, after Abbott's expert realized he had been contacted by attorneys Stein and Meyer on behalf of the plaintiff in the *Froman* litigation, the expert would not return telephone calls, letters, or messages and had no contact with attorney Ghezzi or any other attorney with her firm. These statements support the trial court's finding of fact that counsel's conduct deprived Abbott of the services of its retained expert. Accordingly, after thoroughly reviewing the record, we conclude that the two findings of fact contested by plaintiff are supported by competent evidence and are binding on appeal.

[3] Turning next to the conclusions of law, we observe that, while generally "[c]onclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal," *id.* at 101, 655 S.E.2d at 369, when reviewing the conclusions of law in the instant order, reached in the context of the trial court's exercise of its discretion, we need determine only whether they are the result of a reasoned decision based upon the specific language of N.C.G.S. § 84-4.2. *Smith v. Beaufort Cty. Hosp. Ass'n*, 141 N.C. App. 203, 210-11, 540 S.E.2d 775, 780 (2000) (stating that section 84-4.2 expressly gives judges discretion summarily to revoke *pro hac vice* admissions previously allowed and that because the trial court's "conclusion of law is clearly the result of a reasoned decision," the trial court did not abuse

its discretion in ordering the revocation), *aff'd per curiam*, 354 N.C. 212, 552 S.E.2d 139 (2001).

First, the trial court concluded as a matter of law that "[p]ursuant to N.C.G.S. § 84-4.2, [it had] the discretionary authority to summarily revoke the permission granted to Mr. Stein and Mr. Meyer under N.C.G.S. § 84-4.1, on its own motion and in its discretion." As noted above, N.C.G.S. § 84-4.2 provides the trial court precisely this discretion to issue such a summary revocation and therefore expressly supports the trial court's first conclusion of law.

[4] The trial court next concluded that Stein and Meyer's "*ex parte* contact with Abbott's retained expert, without Abbott's knowledge and permission, during the pendency of the *Hill* litigation was inappropriate and constitutes the appearance of an impropriety." This conclusion of law is a reasoned decision supported by the trial court's findings of fact and is consistent with the trial court's exercise of its discretion under section 84-4.2.

[5] We now turn to the trial court's third conclusion of law, that the conduct of Meyer and Stein in contacting Abbott's unrepresented expert "without disclosing that their interests were in conflict with Abbott, constitutes the appearance of impropriety and is inconsistent with fair dealings as reflected in Rule 4.3 of the Rules of Professional Conduct." This conclusion of law is in two parts, the second of which cites for the first time the North Carolina Rules of Professional Conduct. The Court of Appeals held, and plaintiff argues before us, that the trial court erred in concluding that plaintiff's attorneys violated the North Carolina Rules of Professional Conduct:

> Because a Kentucky court had already determined that Mr. Meyer's and Mr. Stein's actions in a prior Kentucky case did not violate its ethical rules, Rule 8.5 prohibits their actions from now being determined to be subject to disciplinary action pursuant to the North Carolina Rules of Professional Conduct.

*Sisk*, 194 N.C. App. at 815, 670 S.E.2d at 355. The Court of Appeals determined that "[t]he trial court's conclusions were based upon a misapprehension of law and such misapprehension was material and changed the outcome." *Id.* Consequently, the Court of Appeals found that the trial court had abused its discretion and reversed the trial court. *Id.*

However, in focusing on the Rules of Professional Conduct, the Court of Appeals did not consider the trial court's independent inher-

ent authority to discipline attorneys. In North Carolina there are two methods for enforcing attorney discipline. *In re Delk*, 336 N.C. 543, 550, 444 S.E.2d 198, 201 (1994). Under the first method, discipline may be imposed when the Council of the State Bar proceeds against an attorney pursuant to statute. *Id.*; *see* N.C.G.S. § 84-28 (2009). Under the second, a court possesses inherent authority to discipline attorneys. *In re Delk*, 336 N.C. at 550, 444 S.E.2d at 201. This authority is not limited by the rules of the State Bar. *Id.*; *see* N.C.G.S. § 84-36 (2009) ("Nothing contained in this Article shall be construed as disabling or abridging the inherent powers of the court to deal with its attorneys."). An attorney admitted *pro hac vice* is as much subject to this inherent authority of the court as is an attorney licensed in North Carolina, and the discretion summarily to revoke *pro hac vice* status pursuant to section 84-4.2 is entirely consistent with the inherent disciplinary powers of the court. Thus, while the choice of law provision of Rule 8.5 may control conduct that the Council of the State Bar can discipline,[2] that rule abridges neither a trial court's inherent authority to discipline attorney misconduct nor its discretion to revoke *pro hac vice* status under section 84-4.2.

Nevertheless, in exercising its discretion, a trial court may consider the Rules of Professional Conduct when deciding whether to revoke *pro hac vice* status. Rule 4.3 of the North Carolina Revised Rules of Professional Conduct provides in pertinent part:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not:
>
> . . . .
>
> (b) state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

N.C. St. B. Rev. R. Prof. Conduct 4.3 ("Dealing with unrepresented person"), 2010 Ann. R. N.C. 759, 849. Moreover, the official comment to the rule states that "[t]o avoid a misunderstanding, a lawyer will typically need to identify the lawyer's client and, where necessary, explain that the client has interests opposed to those of the unrepresented person." *Id.* cmt. para. 1.

---

2. As adumbrated above, because we base our holding on the inherent power of the trial court, we need not address the Court of Appeals tacit assumption that the predominant effect of the actions of attorneys Meyer and Stein would not be in North Carolina.

Here the trial court found as fact that "Abbott's retained expert was an unrepresented person, likely not experienced in dealing with legal matters." It further found that "Mr. Meyer contacted Abbott's retained expert, employed him as a retained expert, and intentionally did not advise [him] that he was contemplating a claim against Abbott Laboratories." These findings of fact adequately support both parts of the trial court's dual conclusion of law that the conduct of plaintiff's counsel (1) "constitut[ed] the appearance of impropriety" and (2) "[was] *inconsistent* with fair dealings as reflected in Rule 4.3 of the Rules of Professional Conduct." (Emphasis added.) As to the latter conclusion, this Court has not previously considered the extent to which Rule 4.3 applies to expert witnesses. However, we need not address whether the conduct of the attorneys violated this rule because the trial court's carefully worded conclusion of law states only that counsel's conduct was inconsistent with it.

The trial court's invocation of Rule 4.3 for guidance, therefore, does not indicate either a misapprehension of the rule or an inappropriate reliance on it. To the contrary, the trial court displayed a nuanced understanding of the discretion accorded it under section 84-4.2. Accordingly, we hold that the trial court was not acting under a "misapprehension of law" when it reached its decision here.

**[6]** In its fourth and final conclusion of law, the trial court balanced plaintiff's substantial right to select attorneys of her choice against the conduct of Meyer and Stein. In so doing, the court took judicial notice that many North Carolina lawyers are capable of handling plaintiff's case, indicating that the trial court gave adequate regard to the interests of both parties. In light of these findings, the trial court's conclusion that "the conduct set forth . . . outweighs the plaintiff's right to select counsel" is fully supported.

After reviewing the trial court's carefully considered findings of fact and conclusions of law, we hold that the trial court did not abuse its discretion in revoking the *pro hac vice* admission of attorneys Meyer and Stein.

**[7]** Finally, plaintiff asks us to consider whether the trial court erred in revoking the *pro hac vice* status of attorney Stein for the conduct of attorney Meyer. However, the trial court found as fact that Meyer acted with the knowledge and condonation of Stein and that Stein admitted in court that he and Meyer wanted to keep Abbott's expert "in the black," that is, ignorant of possible defendants, while contacting him. This finding of fact by the trial court concerning Stein's

**IN RE D.S.**

[364 N.C. 184 (2010)]

involvement is supported by competent evidence and justifies the trial court's discretionary decision to revoke Stein's admission.

For the foregoing reasons we reverse the Court of Appeals and instruct that court to reinstate the trial court's order revoking the *pro hac vice* admissions of attorneys Meyer and Stein.

REVERSED.