An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-193
NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

STATE OF NORTH CAROLINA

v.                                    Durham County
                                      No. 12 CRS 55506
SHAUN SMITH


Appeal by defendant from order and judgment entered 30 August 2013 by Judge Paul C. Ridgeway in Durham County Superior Court. Heard in the Court of Appeals 13 August 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Ward Zimmerman, for the State.*

> *Farber Law Firm, P.L.L.C., by Sarah Jessica Farber for defendant.*


ELMORE, Judge.


After Shaun Smith's (defendant) motion to suppress for lack of reasonable suspicion was denied by the trial court, he pled guilty pursuant to *Alford* on 30 October 2013 to possession with the intent to manufacture, sell or deliver a schedule VI controlled substance and maintaining a vehicle for a controlled substance. The convictions were consolidated into one judgment

at sentencing, and defendant received a suspended sentence of 4-14 months imprisonment with 24 months of supervised probation. Defendant preserved his right to appellate review of the motion to suppress pursuant to N.C. Gen. Stat. § 15A-979(b). After careful consideration, we affirm the trial court's order.

## I. Facts

On 6 June 2012, Officer K.A. Schooley and Officer E.J. Jeffries (collectively "the officers") of the Durham Police Department drove to the parking lot of the Durham Housing Authority (DHA) at 131 Commerce Street in Durham (the parking lot) to serve a warrant on a nearby apartment resident. The officers parked in the parking lot next to a green Honda Accord, and they noticed defendant asleep in the driver's seat. The officers walked to the nearby apartment to serve the unrelated warrant and returned to their patrol car. At that time, the officers recognized defendant from his involvement in previous drug activity and an encounter in the same parking lot a day prior. After reviewing the Honda's title to confirm that it did not belong to defendant, Officer Schooley "approached the Honda and knocked on the window. The [defendant] . . . opened the door and stepped out." She then asked defendant why he was in the parking lot and whether his vehicle contained narcotics.

Defendant indicated that he "was waiting to visit someone" and did not have any narcotics inside the vehicle. He also denied Officer Schooley's request for a consent search of the vehicle. At that point, Officer Schooley called for a canine officer, and the canine officer arrived with the canine approximately ten minutes later. Just before the canine began to sniff the vehicle, Officer Schooley asked defendant to stand with her behind the vehicle to create a distance between the canine and defendant. The canine then "gave a positive indicat[ion] of narcotics in the vehicle[,]" and the officers searched the vehicle. The search yielded 122 grams of marijuana, over $500 cash, an assault rifle, and ammunition.

## II. Analysis

### a.) Findings of fact

First, defendant argues that the trial court's findings of fact in support of its legal conclusion are not supported by competent evidence. We disagree.

"In reviewing a trial judge's findings of fact, we are 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.'" *State v. Williams*, 362 N.C. 628,

632, 669 S.E.2d 290, 294 (2008) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)); *see also Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010) ("'[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if . . . there is evidence to the contrary.'" (quoting *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 100-01, 655 S.E.2d 362, 369 (2008))).

The trial court concluded that reasonable suspicion existed based on six findings of fact:

> (1) the presence of the Defendant at a high drug trafficking site; (2) the officer's knowledge of drug-related complaints involving Defendant in other instances; (3) the knowledge of the officers from the day before of Defendant's association with known gang members and others engaged in drug trafficking; (4) the presence of the Defendant on the prior day at the same site when a 911 tip reported possible drug activity; (5) the presence of the Defendant at the Durham Housing Authority parking area where, just one day prior, the Defendant had been warned that he was not permitted to loiter without a resident of the apartments being present; and (6) the use by Defendant of a vehicle not registered in his name.

Each of these findings are supported by competent evidence. With regard to Finding (1), Officer Schooley testified that defendant was found in a parking lot that is "a Crip area. . . .

[I]ndividuals hang out in the parking lots that do not live there and sell narcotics" on a daily basis "around the clock." In addition to the drug and gang activity, Officer Schooley stated that she frequently receives complaints in that location for loitering, trespassers, and loud noise. Officer Jeffries also acknowledged that complaints about drug sales in the parking lot occur "during the day and also in the evening[.]"

In support of finding (2), the evidence shows that Officer Jeffries "knew [defendant] from dealings before -- maybe prior to June 5th. [Defendant] and his cousins were loitering at another housing complex in East Durham which was Hoover Road Apartment, which [officers] had been given -- receiving several complaints about loitering and drug activity in that apartment complex."

Findings (3) and (4) are supported by the officers' testimony that on 5 June 2012, one day before defendant's arrest, the officers responded to the parking lot after receiving drug complaints in that location. When they arrived at the parking lot, defendant was present with Malick and Malachi Eubalis, both of whom were Crip gang members and known drug dealers. Officer Schooley "personally participated in a drug raid on Ashe Street with [the Eubalis']" in the past.

In support of Finding (5), the evidence shows that defendant was found in the parking lot on 6 June 2012 despite trespass warnings and being told the day before that "if [he wasn't] visiting somebody, . . . [he wasn't] allowed to just be loitering in the parking lot" because the DHA rules require that a visitor must be present with a resident while on the parking lot premises.

Finally, with regard to Finding (6), Officer Schooley observed defendant in a green Honda Accord and discovered that the license plate of the vehicle actually belonged to a female, and the location of the vehicle's registered address was on the opposite side of Durham.

Each of the trial court's findings of fact are supported by competent evidence. Thus, they are binding on this appeal.

## b.) Reasonable Suspicion

Next, we must determine whether the trial court's findings of fact support its conclusion of law that reasonable suspicion existed to seize defendant "for the period of time sufficient to allow for the canine unit to arrive on the scene (ten minutes) and for the canine to walk around the vehicle[.]" We first note that the order is devoid of facts sufficient to actually determine whether defendant's interaction with the officers

while waiting for the canine to arrive and walk around the vehicle was merely a consensual encounter or a seizure under the 4th Amendment requiring reasonable suspicion. However, assuming *arguendo* we adopt defendant's position that the officers seized defendant, we nevertheless hold that the seizure was supported by reasonable suspicion.

"The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000). "The Fourth Amendment, applicable to the states through the Fourteenth Amendment, protects the right of people to be free from unreasonable searches and seizures. This protection applies to seizures of the person, including brief investigatory detentions." *State v. Campbell*, 188 N.C. App. 701, 704-05, 656 S.E.2d 721, 724 (2008) (citations and quotation marks omitted). Such an investigatory detention is lawful if a police officer possesses "reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Id.* at 705, 656 S.E.2d at 724-25 (citation and quotation marks omitted). We consider the totality of the circumstances "through the eyes of a reasonable, cautious officer, guided by his experience and training at the time he determined to detain defendant." *State v. Myles*, 188 N.C. App.

42, 47, 654 S.E.2d 752, 756, *writ allowed,* 362 N.C. 242, 660 S.E.2d 537 (2008) and *aff'd,* 362 N.C. 344, 661 S.E.2d 732 (2008) (citation and quotation marks omitted). The State's burden to demonstrate reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (citation and quotation marks omitted). However, the State must show "a minimal level of objective justification, something more than an unparticularized suspicion or hunch." *State v. Watkins*, 337 N.C. 437, 442, 446 S.E.2d 67, 70 (1994) (citation and quotation marks omitted).

Here, the trial court's findings of fact indicate that the officers found defendant in a high-crime area, officer Jeffries knew defendant from prior instances involving illicit drug activity, and defendant was present with other known gang members and drug dealers one day prior to his arrest in the same location when officers responded to the scene due to drug complaints. Moreover, defendant told the officers that he was waiting in the vehicle to visit people in the apartment complex, even though defendant was asleep in the vehicle when the officers initially arrived, and the officers did not see any

individual exit the apartments to approach defendant at any point. Finally, defendant's use of a vehicle registered in another female's name was significant because officer Schooley testified that based on her training and experience, males involved in illegal drug activity frequently use vehicles titled in other people's names "whether it's their girlfriend or wife . . . to avoid detection" by law enforcement.

The officers properly considered these factors in totality to determine the presence of reasonable suspicion. *See State v. Garcia*, 197 N.C. App. 522, 529, 677 S.E.2d 555, 559 (2009) (stating that the defendant's presence in a high-crime area is a factor relevant in determining reasonable suspicion); *see also State v. Watson*, 119 N.C. App. 395, 398, 458 S.E.2d 519, 522 (1995) (holding that officers had reasonable suspicion to detain the defendant for drugs, in part, because they knew the defendant had previously been arrested for similar crimes in the past); *State v. McClendon*, 350 N.C. 630, 637, 517 S.E.2d 128, 133 (1999) (asserting that the defendant's responses to an officer's questions may contribute to reasonable suspicion).

Thus, the trial court did not err in determining that the officers had reasonable suspicion to seize defendant while

waiting for the canine unit to arrive and walk around the vehicle.

### III. Conclusion

In sum, we affirm the trial court's order denying defendant's motion to suppress because the trial court's findings of fact are based on competent evidence, and the findings support the trial court's legal conclusion that the officers possessed reasonable suspicion to seize defendant while waiting for the canine unit to arrive and walk around the vehicle.

Affirmed.

Judges CALABRIA and STEPHENS concur.

Report per Rule 30(e).